(No. 39158.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WAYNE F. McLAIN, Appellant.

*Opinion filed March 29, 1967.—Rehearing denied May 16, 1967.*

174

Solfisburg, C.J., took no part.

David P. Peskind, of Aurora, (Tyler and Peskind, of counsel,) appointed by the court, for appellant.

William R. Ketcham, State's Attorney, of Elgin, (W. Ben Morgan, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

A constitutional question of due process is concerned in this appeal from an order entered by the circuit court of Kane County denying defendant's petitions for a writ of *habeas corpus,* for a writ of error *coram nobis* and for a post-conviction hearing, which petitions had been consolidated for hearing.

The defendant, Wayne F. McLain, urges that preceding and at the time of his trial for armed robbery there were facts present which had they been known to the trial court would have raised a *bona fide* doubt as to his sanity. He argues that if these had been presented to the trial court,

under our rulings a jury would have had to have been impaneled for the purpose of determining the defendant's capacity to understand the nature and object of the charge against him and to co-operate with counsel before proceeding to trial. See Ill. Rev. Stat, 1965, chap. 38, par. 104—2; *People* v. *Anderson,* 31 Ill.2d 262; *People* v. *De Simone,* 28 Ill.2d 72.

The defendant was arrested on November 19, 1958, by police of the city of Elgin. It was alleged that the defendant hired a cab to take him from Chicago to Elgin and that he gave the driver a check for $25 to pay for the trip. In Elgin, a short distance from his ex-wife's home he allegedly robbed the driver of $40 and took back the check. The victim remembered the defendant's name as the drawer of the check and consequently the police took the defendant into custody at his former wife's home.

On November 28, 1958, the defendant attempted to hang himself in the Kane County jail. The same day he was brought to the Elgin State Hospital as an emergency admission. On November 29, 1958, the sheriff's office formally petitioned for the defendant's commitment and on December 10, 1958, the county court adjudged that the defendant was a mentally ill person and ordered him to be committed to the Elgin State Hospital.

A physician who examined the defendant on November 28 found him agitated, depressed and not responsive to questions. Another physician on December 3 described his opinion of defendant's condition as "Impression: acute psychotic reaction-Schizophrenia." A Dr. Nasvytis of the Elgin State Hospital staff who examined the defendant on December 4 and December 8 also formed the impression of schizophrenia—"catatonic type." This physician subsequently testified at the hearing on the defendant's petition herein concerned that the defendant at the time of the examinations was a "mentally sick person."

Medical reports prepared principally by Dr. Nasvytis

and received into evidence at the hearing before the circuit court described the defendant on the occasions of examinations by Dr. Nasvytis on December 4, 8 and 14, 1958, as mute, preoccupied and tense. On December 14, Dr. Nasvytis prescribed a dosage of 100 mgs. of thorazine, a tranquilizer, to relieve the defendant's tension, and on January 25, 1959, raised the dosage to 150 mgs. as the defendant "has been increasingly tense * * * and is walking the corridors continuously." On January 8, 1959, the defendant was interviewed while under the influence of sodium amytal in an effort to determine whether he was malingering or was actually ill. Asked about the robbery of which he was accused the defendant stated that he did not know anything about it.

At the hearing the defendant introduced evidence that in 1956 while awaiting trial on a confidence game charge he had attempted suicide in the same jail of Kane County and had been committed by court order to the Elgin State Hospital at that time as a mentally ill person. While a patient he tried to escape by leaping through an open window to a concrete walk fifteen feet below and sustained several fractures. The defendant at this hearing, also, denied any recollection of the robbery of November 19, 1958, and testified that since incarceration he had been assigned to the psychiatric division of the penal institution.

The matter of the November 19, 1958, robbery was presented to the Kane County grand jury, and an indictment charging the defendant with armed robbery was returned on January 5, 1959. The *capias* which was issued on the same day was not served, as the defendant, pursuant to the county judge's order, was confined to the Elgin State Hospital. McLain was released from the hospital on February 9, 1959, and the hospital records indicated: "Released on Absolute Discharge as: Improved."

McLain was taken into custody upon his release on February 9. He was arraigned the same day and the public defender was appointed to represent him.

On March 2, 1959, the defendant waived a jury and was found guilty in a bench trial and sentenced to a term of 5 to 20 years in the penitentiary. Neither the defendant nor the public defender requested a sanity hearing to determine the defendant's competency at the time of his trial.

The then State's Attorney had formed the opinion, prior to trial, that the defendant was a malingerer and on February 13, 1959, he had requested a Dr. Ross, a psychiatrist, to examine the defendant. A written report was apparently not prepared by Dr. Ross until March 4, 1959, but the examination was conducted on February 15, 1959, and evidently an oral report was made to the State's Attorney. Dr. Ross's opinion was that the defendant was legally sane, that he knew the nature of the charge against him and was able to co-operate with counsel. The State's Attorney at the hearing on defendant's consolidated petition testified that he advised the public defender of Dr. Ross's opinion prior to trial.

The record does not disclose that the trial court knew of Dr. Ross's examination or of the defendant's history of mental illness.

It is basic that an insane person cannot lawfully be tried for a crime and that to place such a person on trial is a denial of due process. (*People* v. *Bender,* 20 Ill.2d 45; *People* v. *Burson,* 11 Ill.2d 360; *People* v. *Reeves,* 412 Ill. 555.) It is also generally true that it is the responsibility of the accused or his attorney to raise the question of the accused's competency to stand trial. (*People* v. *Maynard,* 347 Ill. 422; *People ex rel. Wiesman* v. *Nierstheimer,* 401 Ill. 260.) However, the failure of a defendant to raise this issue will not always preclude him from later having the question considered. As we said in *People* v. *Burson,* 11 Ill.2d 360 at 370, "this is a rule of administration and not of jurisdiction or power, and it will not operate to deprive an accused of his constitutional rights of due process."

This court has held that if facts existed at the time of defendant's trial which, if presented to the trial court,

would have raised a *bona fide* doubt as to his sanity, the accused would have had a right to have a jury impaneled to try the question of his sanity. (*McDowell v. People,* 33 Ill. 121; *People v. Anderson,* 31 Ill.2d 262; *People v. De Simone,* 28 Ill.2d 72; *People v. Richeson,* 24 Ill.2d 182; *People v. Robinson,* 22 Ill.2d 162; *People v. Burson,* 11 Ill.2d 360.) An appropriate means for raising the issue of defendant's sanity when such facts existed at the time of trial but were unknown to the court is a petition in the nature of a writ of error *coram nobis. McDowell v. People,* 33 Ill.2d 121; *People v. Anderson,* 31 Ill.2d 262.

The combination of this defendant's judicially ordered commitments for mental illness, his attempts at suicide, the circumstances of his effort to escape from the mental hospital resulting in serious injury, the testimony of Dr. Nasvytis and his medical impressions and those of other examining physicians concerning the defendant's mental condition, and the fact he was brought immediately from a confinement for mental illness to arraignment, if known, might well have impressed upon the trial court a *bona fide* doubt of the defendant's sanity. We cannot say that the opinion of Dr. Ross that the defendant was competent to stand trial would have, if known by the trial court, so counterbalanced the other facts present that the trial court would not have found a *bona fide* doubt of the defendant's competency so as to have required a hearing by jury.

The cases cited by the State in support of its contention that there was no basis for a *bona fide* doubt of defendant's sanity are distinguishable.

In *People v. Richeson,* 24 Ill.2d 182, on which the State principally relies, the factual situation was significantly different from the present case. The defendant had been committed as a mental patient to a State hospital and had escaped about a month later. There had been an interval of more than a year and a half between his escape and his arraignment. The trial judge had an opportunity to question

and did question the defendant extensively with respect to his background and his mental capacity. Here, the record does not reveal that the court was ever apprised that the defendant had a history of mental illness and thus the court had no reason to conduct nor did it conduct any inquiry to evaluate the defendant's capacity.

*People* v. *Baker,* 26 Ill.2d 484, involved a situation in which there had not been an adjudication of insanity, and the court accepted the defendant's plea only after there had been a psychiatric examination which found the defendant to have been competent.

There was also no prior adjudication of mental incompetence in *Withers* v. *People,* 23 Ill.2d 131. The only fact relied on by the defendant to establish his mental incapacity was that he had been placed in the psychiatric division of the penitentiary immediately upon his confinement.

In *People* v. *Harper,* 31 Ill.2d 51, there was no adjudication of incompetency and the only evidence submitted to establish incompetence was the defendant's admission to a hospital about two months prior to trial for delirium tremens. He was, however, apparently treated and released the same day.

We further do not believe that the defendant's constitutional rights could be satisfied here by remanding the case to the circuit court for a limited hearing to determine the defendant's sanity as of the time of his trial. In the recent case of *People* v. *Thompson,* 36 Ill.2d 332, we held that a limited hearing on the question of the defendant's sanity as of the time of his plea would not be sufficient and that due process required a full new trial.

Our ruling in the *Thompson* case was grounded on the authority of *Pate* v. *Robinson,* 383 U.S. 375, 15 L. Ed. 2d 815, where the United States Supreme Court considered this question. The Supreme Court held that such a limited hearing would not satisfy constitutional requirements of due process because of the inherent difficulties

180

there of retrospectively determining the defendant's sanity. In that case any hearing would have been held six years after the defendant's trial.

Here, the defendant's trial was in 1959. There would be an interval of at least 8 years between the date of trial and the date of retrospectively determining the competency of the defendant to stand trial. Any hearing now or hereafter which would seek to ascertain the competency of the defendant in 1959 would not accord the defendant due process.

Accordingly, we reverse the judgment of the circuit court of Kane County which found the defendant guilty and which denied his consolidated petition and remand the cause for a new trial.

*Reversed and remanded.*

Mr. CHIEF JUSTICE SOLFISBURG took no part in the consideration or decision of this case.