(No. 73650.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TYRONE BRANDON, Appellant.

*Opinion filed September 22, 1994.—Rehearing denied December 5, 1994.*

MILLER, J., joined by BILANDIC, C.J., and HEIPLE, J., dissenting.

Charles M. Schiedel, Deputy Defender, and Allen H. Andrews, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn Kaplan, Solicitor General, and Terence M. Madsen, Kathy Shepard and Arleen C. Anderson, Assistant Attorneys General, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of Will County, Tyrone Brandon was convicted of first degree

murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1) and aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14). Brandon elected to have the trial court determine his sentence, and the court found that he was eligible to be sentenced to death because the murdered individual was killed in the course of another felony. (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(b)(6).) The court further determined that there were no mitigating factors sufficient to preclude imposition of a sentence of death. (See Ill. Rev. Stat. 1991, ch. 38, par. 9—1(h).) Accordingly, it sentenced Brandon to death. The death sentence has been stayed (134 Ill. 2d R. 609(a)), and the case is now before us on direct appeal (Ill. Const. 1970, art. VI, § 4(b); Ill. Rev. Stat. 1991, ch. 38, par. 9—1(i); 134 Ill. 2d R. 603). For the reasons which follow, we reverse and remand.

On April 24, 1990, Estervina Van Duyne was sexually assaulted, then brutally murdered in her home. Brandon was interrogated about the crime at police headquarters several days later, but denied any involvement. A subsequent search of his car and the house where he was staying revealed nothing. Following the search, Brandon went to the police station, where he again denied any involvement. The police then took his fingerprints and released him.

A print from one of Brandon's fingers and his palm-print matched latent prints on a bloody mop handle found next to Van Duyne's body. Police subsequently arrested Brandon for murder. He was taken to the police station, where he confessed to the killing. According to the chief of police, Brandon claimed that he had wanted to rob Van Duyne of $500. When she resisted, he struck her several times and choked her. He then sexually assaulted her and stabbed her.

Following Brandon's indictment for this crime, the court appointed an expert to conduct a psychological

and neuro-psychological evaluation of him. The court found that the expert's report did not raise a *bona fide* doubt as to Brandon's fitness to stand trial. Thereafter, Brandon's attorneys filed a motion arguing that he was not fit to stand trial because a learning disability prevented him from understanding what occurred in court.

In support of their motion, Brandon's attorneys submitted an affidavit stating that their client could not understand the discussions they had with him about the facts and legal issues in the case. The court then conducted a hearing to determine whether a *bona fide* doubt existed as to Brandon's fitness to stand trial. At that hearing, two witnesses were presented.

The first witness was Vivien Liese, who evaluates individuals to determine whether they have learning disabilities. Based on a six- or seven-hour evaluation of Brandon, Liese concluded that he had serious vocabulary handicaps, a substantial deficiency in his ability to discriminate sounds, and deficits in interpreting ambiguous words and understanding speech. Liese characterized Brandon as suffering from a receptive language dysfunction.

According to Liese, Brandon would have great difficulty in understanding speech if there was background noise, such as air conditioning, the rustling of clothes or paper, or the sound of a stenographer's machine. He cannot comprehend complex sentences that contain many phrases, and can only understand slow, clear speech. He functions at the third percentile for people his age in terms of words he can process and understand, and he scored in the fifth percentile in memory tests.

Liese was concerned that Brandon "would not really be able to understand the proceedings in order to be able to share [information with counsel]." Liese stated

that because Brandon has difficulty comprehending others, the information he provides might not be accurate. She also testified that he usually behaves as though he understands what others are saying to him, even when he does not.

The second witness was Pamela Mowers, a school psychologist who had evaluated Brandon for special education purposes while he was in high school. Mowers agreed that Brandon's short-term memory was poor and that he had difficulty in understanding language. She further testified that there was a consistently large gap between Brandon's verbal IQ and his performance IQ, demonstrating a language dysfunction.

Based on this evidence, the circuit court agreed that Brandon suffered from a language dysfunction and an impaired ability to understand. The court nevertheless refused to grant a fitness hearing. It did so on the grounds that none of Brandon's evidence showed that he was unable to understand the nature of the proceedings or that he was unable to assist in his defense.

After the fitness hearing was denied and Brandon failed in his efforts to suppress his confession, the case proceeded to trial on the merits. At trial, Brandon did not deny that he had beaten, raped and killed Van Duyne. Rather, he asserted an insanity defense. The defense proved unsuccessful, and, as noted at the outset of this opinion, the jury returned a verdict of guilty.

Before sentencing, Brandon's attorneys made a second request for a fitness hearing. That request was also denied, and the circuit court sentenced Brandon to death. On this appeal, Brandon first argues that he is entitled to a new trial because the circuit court erred in denying him a fitness hearing.

The due process clause of the fourteenth amendment (U.S. Const., amend. XIV) prohibits the prosecution of a person who is unfit to stand trial. (*Medina v. California*

(1992), 505 U.S. 437, 439, 120 L. Ed. 2d 353, 359, 112 S. Ct. 2572, 2574.) Accordingly, this court has long held that the failure to observe procedures adequate to protect a defendant's right not to be tried while unfit deprives him of his due process rights to a fair trial. *People v. Murphy* (1978), 72 Ill. 2d 421, 430.

The law presumes that a defendant is fit to stand trial, plead, and be sentenced. A defendant is considered unfit to stand trial if, because of a mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. 725 ILCS 5/104—10 (West 1992); *People v. Eddmonds* (1991), 143 Ill. 2d 501, 512.

Because of the fundamental constitutional nature of the fitness requirement, once facts are brought to the attention of the trial court, either from observation of the defendant or by suggestion of counsel, which raise a *bona fide* doubt of the defendant's fitness to stand trial, the court has a duty to hold a fitness hearing. (725 ILCS 5/104—11(a) (West 1992); *Murphy*, 72 Ill. 2d at 430.) In addition, section 104—21(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21(a) (West 1992)) provides that a "defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication."

In this case, evidence adduced at the sentencing hearing established that Brandon was taking drugs under medical direction. According to the record, Brandon began experiencing auditory hallucinations within several days of his incarceration. To control those hallucinations, he was started on a program of psychotropic medications, including an antidepressant drug, an antipsychotic drug, and a drug to control the side effects of the antipsychotic drug. Brandon was on these medications continuously and remained on them through sentencing.

Although Brandon was taking psychotropic medications, his attorneys failed to so advise the court at the time they made their first request for a fitness hearing. They also neglected to invoke the express terms of section 104—21(a) of the Code of Criminal Procedure (725 ILCS 5/104—21(a) (West 1992)) even after the fact of the medication was placed in evidence. Throughout the proceedings, they acted on the assumption that this was a case where the decision to order a fitness hearing was simply a matter of discretion for the trial court. The provisions of section 104—21(a) (725 ILCS 5/104—21(a) (West 1992)) were not raised until this appeal. Accordingly, the State contends that Brandon has waived the issue.

Section 104—21(a) (725 ILCS 5/104—21(a) (West 1992)) evinces a recognition by the General Assembly that psychotropic medication is an important signal that a defendant may not be competent to stand trial. If a defendant on such medication is not fit to stand trial, he can scarcely be expected to raise the question of fitness in the first instance. Where a defendant's capacity is the issue in question, it is anomalous to even consider concepts of waiver. As the United States Supreme Court has recognized, "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson* (1966), 383 U.S. 375, 384, 15 L. Ed. 2d 815, 821, 86 S. Ct. 836, 841.

Wholly aside from these considerations, the State's argument must fail. It is true that to preserve an issue on appeal, the issue must have been the subject of both a trial objection and a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Our rules also provide, however, that plain errors or defects affecting substantial rights may be noticed even though they were

not brought to the attention of the trial court. (134 Ill. 2d R. 615(a).) The plain error doctrine embraces claims of ineffective assistance of counsel. (*People v. Cooper* (1989), 132 Ill. 2d 347, 358.) In this case, Brandon contends that he was denied effective assistance of counsel when his attorneys failed to point out to the trial court that their client was entitled to a fitness hearing under section 104—21(a) of the Code of Criminal Procedure (725 ILCS 5/104—21(a) (West 1992)) because he was on psychotropic medication. We agree.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must first demonstrate that counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) In addition, a defendant must demonstrate that counsel's deficient performance substantially prejudiced his defense. With respect to the situation present here, a defendant can demonstrate such prejudice by showing that the trial court would have ordered a fitness hearing if it had been informed of the matters the defendant now seeks to raise. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 513.

The State does not dispute that the first prong of the *Strickland* test was satisfied. This is not a case where counsel's actions can be dismissed as a matter of judgment or trial strategy. The only explanation for the failure of Brandon's attorneys to raise the question of Brandon's medication earlier in the proceedings or to invoke the requirements of section 104—21(a) of the Code of Criminal Procedure (725 ILCS 5/104—21(a) (West 1992)) once the fact of his medication was in evidence is that counsel did not comprehend the significance of Brandon's treatment or their client's rights under the law.

As for the second prong of *Strickland*, the prejudice is manifest. Had counsel advised the court that Brandon was on psychotropic medication at the time of their first request for a fitness hearing or invoked the provisions of section 104—21(a) (725 ILCS 5/104—21(a) (West 1992)) after the court heard testimony about the drugs, a fitness hearing would have been automatic. A trial court may have no obligation to conduct a fitness hearing *sua sponte* where it does not know that a defendant is on medication, no request for a hearing is made until after trial, and there has been no indication to the trial court that the defendant might be unfit. Where, however, a proper request for a fitness hearing is made by a defendant who is receiving psychotropic or other medications under medical direction, the statute expressly provides that he is "entitled" to receive one. 725 ILCS 5/104—21(a) (West 1992).

Notwithstanding this language, the State argues that the decision to deny Brandon a fitness hearing was ultimately a matter for the trial court's discretion. According to the State, it was not an abuse of discretion for the court to deny a hearing once the guilt phase of the trial ended because the court was able to observe the actual course of Brandon's conduct at trial and "[l]ittle, if any, more information could be gained by a formal fitness hearing."

A similar argument was rejected by the United States Supreme Court in *Pate v. Robinson* (1966), 383 U.S. 375, 386, 15 L. Ed. 2d 815, 822, 86 S. Ct. 836, 842, a *habeas corpus* proceeding from Illinois. In that case, this court had held on direct appeal that the circuit court did not err when it failed to order a fitness hearing *sua sponte*. In reaching this conclusion, the court noted that the record reflected several instances where the defendant displayed his ability to assist in the conduct of his defense in a reasonable and rational manner. (*People v.*

*Robinson* (1961), 22 Ill. 2d 162, 167-68.) The United States Supreme Court held, however, that "[w]hile [the defendant's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." (*Pate*, 383 U.S. at 386, 15 L. Ed. 2d at 822, 86. S. Ct. at 842.) Accordingly, the court ordered the defendant discharged unless the State gave him a new trial within a reasonable time.

The same conclusion was reached more recently in *Griffin v. Lockhart* (8th Cir. 1991), 935 F.2d 926. There, the court held that the fact that the defendant appeared rational and competent before and during trial was irrelevant to the issue of his entitlement to a competency hearing, "for once a doubt about the competency of an accused exists, later behavior ' "cannot be relied upon to dispense with a hearing." ' [Citations.]" (*Griffin*, 935 F.2d at 931.) As in *Pate v. Robinson*, the court concluded that the defendant must be discharged unless the State gave him a new trial in a timely fashion.

This precedent aside, the State's argument with respect to Brandon's appearance at trial must also fail because it overlooks the nature of his condition. Brandon may have appeared to function acceptably, but as defense witness Liese explained, even when Brandon responds to a question, it is hard to know if he actually understands the questioner. Moreover, because he cannot understand the conversation of others, the information he offers may not be correct. As a result, Brandon's "fitness" may have been illusory.

An equally serious flaw in the State's position is its assumption that the decision to hold a hearing under section 104—21(a) of the Code of Criminal Procedure (725 ILCS 5/104—21(a) (West 1992)) is a matter for the circuit court's discretion. It is axiomatic that in interpreting a statute the language used by the legislature

must be given its plain and ordinary meaning. (*People v. Bryant* (1989), 128 Ill. 2d 448, 455.) As we have just noted, section 104—21(a) (725 ILCS 5/104—21(a) (West 1992)) provides that a defendant on psychotropic or other medication is "entitled" to a fitness hearing. The word "entitled," in its usual sense, means "to give a right or legal title to." (Black's Law Dictionary 532 (6th ed. 1990).) If the legislature has given defendants a statutory right to a hearing under the conditions specified and a defendant chooses to exercise that right, we fail to see how there can be any room for the exercise of discretion by the court. The court must honor the defendant's choice, just as it would be required to honor a defendant's proper demand for a jury trial or his invocation of the right against compelled self-incrimination.

To hold otherwise would require us to declare that the legislature did not mean what the plain language of the statute imports. This we may not do. (*People ex rel. LeGout v. Decker* (1992), 146 Ill. 2d 389, 394.) Where, as here, the statute is clear and unambiguous, we must enforce the law as enacted. See *People v. Wittenmyer* (1992), 151 Ill. 2d 175, 195.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the failure of the defendant's trial attorney to request a fitness hearing under section 104—21(a) of the Code of Criminal Procedure of 1963 constituted ineffective assistance of counsel. (725 ILCS 5/104—21(a) (West 1992).) Although it is true that the defendant was entitled to a fitness hearing under that provision, the appropriate

question here is not whether a hearing would have been held if a proper request had been made, but whether the hearing would have resulted in a disposition favorable to the defendant. To hold otherwise, as the majority does, misconceives the nature of the relevant inquiry in resolving ineffective-assistance claims.

*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, prescribes a two-part test for evaluating allegations of ineffective assistance of counsel. First, the defendant must show that counsel was deficient. Second, the defendant must show that the deficient performance resulted in prejudice. (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) To be sure, there are exceptional cases in which prejudice will be presumed. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. [Citation.] Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost. [Citation.]" (*Strickland,* 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067.) In most cases, however, a defendant raising a claim of ineffective assistance of counsel must establish prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Thus, the relevant inquiry in this case is not whether a fitness hearing would have been conducted if defense counsel had requested one under section 104—21(a), but whether the outcome of the hearing would have been favorable to the defendant, that is, whether the defendant would have been found unfit to stand

trial. The majority, by considering only whether a fitness hearing would have been held (162 Ill. 2d at 457-59), simply presumes the existence of prejudice in circumstances in which such a presumption is not warranted.

For these reasons, I do not believe that this court's opinion in *People v. Eddmonds* (1991), 143 Ill. 2d 501, cited by the majority, should control our decision here. In *Eddmonds*, a post-conviction proceeding, the defendant argued that he was denied the effective assistance of counsel by his trial attorney's failure to investigate his fitness and to request a fitness hearing under the statutory predecessor to section 104—11 of the Code of Criminal Procedure (725 ILCS 5/104—11 (West 1992) (defendant entitled to hearing when *bona fide* doubt of fitness raised)). In that case, the court simply adopted the defendant's premise that, under *Strickland*, "he suffered prejudice because the trial court would have ordered a hearing to determine whether he was fit to stand trial, had it been appraised of the additional evidence raised in the post-conviction petition." (*Eddmonds*, 143 Ill. 2d at 512.) In that case the State, too, apparently accepted the defendant's phrasing of the prejudice inquiry. (*Eddmonds*, 143 Ill. 2d at 513 ("We agree with the State that the defendant is entitled to post-conviction relief on his ineffective-assistance claim only if the evidence introduced at the post-conviction proceeding raised a *bona fide* doubt of his fitness to stand trial").) Without examining whether that formulation was correct or not, the *Eddmonds* court determined that the evidence did not raise a *bona fide* doubt of the defendant's fitness and that the defendant thus was not entitled to relief on his claim of ineffective assistance of counsel.

I do not believe that the present defendant can establish that he was prejudiced by counsel's failure to request a fitness hearing under section 104—21(a). A de-

fendant is unfit to stand trial or to be sentenced if, "because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." (725 ILCS 5/104—10 (West 1992).) The evidence presented by the defendant in support of his request for a hearing under section 104—11 showed that he had low intelligence and a learning disability. Yet the defendant was also a high school graduate and was employed. Moreover, the defense psychologist and the prosecution psychiatrist who examined the defendant in connection with his insanity defense agreed that the defendant could describe the functions of a court and jury. Limited intellectual ability does not by itself render a defendant unfit (*People v. Murphy* (1978), 72 Ill. 2d 421, 432-33; *People v. Lucas* (1986), 140 Ill. App. 3d 1, 7), and I do not believe that the present defendant would have been found unfit.

For the reasons stated, I do not agree with the majority's conclusion that the defendant has established ineffective assistance of counsel, and I would consider the remaining issues raised by the defendant in the case at bar.

CHIEF JUSTICE BILANDIC and JUSTICE HEIPLE join in this dissent.