.(No. 77549.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RICHARD C. NITZ, Appellant.

*Opinion filed June 20, 1996—Rehearing denied September 30, 1996.*

MILLER, J., joined by BILANDIC, C.J., and HEIPLE, J., dissenting.

Aviva Futorian, Lou Anne Kellman and Richard E. Cunningham, all of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Charles R. Garnati, State's Attorney, of Marion (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Michael M. Glick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Williamson County, defendant, Richard Nitz, was convicted of murder, aggravated kidnapping and robbery. Defendant was sentenced to death for the murder conviction. On direct appeal, this court affirmed defendant's convictions and sentences. *People v. Nitz*, 143 Ill. 2d 82 (1991). A subsequent petition for *certiorari* to the United States Supreme Court was denied. *Nitz v. Illinois*, 502 U.S. 927, 116 L. Ed. 2d 283, 112 S. Ct. 344 (1991). Thereafter, defendant filed a petition seeking relief pursuant to the Post-Conviction Hearing Act. 725 ILCS 5/122—1 *et seq.* (West 1992). The petition was dismissed without an evidentiary hearing.

Because defendant was sentenced to death for the underlying murder conviction, the present appeal lies directly to this court. 134 Ill. 2d R. 651(a). For reasons that follow, we now reverse.

Defendant's convictions stem from the 1988 murder of Michael Miley. The particular facts surrounding the offenses for which defendant was convicted and sentenced are recounted in *Nitz*, 143 Ill. 2d 82, and restatement is unnecessary here.

In his petition for post-conviction relief, defendant asserted several claims which, he maintained, required the trial court to grant him either an evidentiary hearing or a new trial. The circuit court determined that defendant's claims were either waived or barred by *res judicata* and dismissed the petition.

We find a basis to reverse on a single one of defendant's claims. We, therefore, limit our discussion to that particular claim.

## ANALYSIS

A proceeding filed under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)) is not an

appeal. Rather, the proceeding is a collateral attack on a prior conviction and sentence. *People v. Mahaffey*, 165 Ill. 2d 445, 452 (1995). The scope of the proceeding is limited to constitutional matters involved in the underlying conviction which have not been, and could not have been, previously adjudicated. *People v. Whitehead*, 169 Ill. 2d 355, 370 (1996). Accordingly, determinations of the reviewing court on direct appeal are *res judicata* as to issues actually decided and issues that could have been raised on direct appeal, but were not, are waived. *People v. Coleman*, 168 Ill. 2d 509, 522 (1995).

In this appeal, defendant contends, *inter alia*, that he is entitled to a new trial because the State withheld information that it was administering psychotropic medication to him throughout the course of his trial and sentencing. The State's failure to disclose this information deprived him of his constitutional due process right to a fitness or competency hearing. Defendant presents two separate bases, either of which, he maintains, supports reversal of his convictions and the grant of a new trial. Prior to addressing the particular arguments, we consider the nature and scope of the due process right in the context of an accused's competency to stand trial.

The due process clause of the fourteenth amendment prohibits the prosecution of a person who is unfit to stand trial. U.S. Const., amend. XIV; see also *Medina v. California*, 505 U.S. 437, 120 L. Ed. 2d 353, 112 S. Ct. 2572 (1992); see also *People v. Eddmonds*, 143 Ill. 2d 501, 512 (1991). A defendant is considered unfit to stand trial if, because of a mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense. *Eddmonds*, 143 Ill. 2d at 512. As Justice Kennedy recently emphasized, "[c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed

essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U.S. 127, 139-40, 118 L. Ed. 2d 479, 492, 112 S. Ct. 1810, 1817 (1992) (Kennedy, J., concurring). Absent facts which raise a *bona fide* doubt of fitness, there is an abiding presumption that a defendant is fit to stand trial. *Eddmonds*, 143 Ill. 2d at 512.

Part and parcel of the right not to be tried while unfit is the right to have an inquiry concerning fitness. More specifically, where there is information available to raise the possibility that an accused is incompetent, the failure to inquire concerning competency violates the accused's due process rights. *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966); see also *Drope v. Missouri*, 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975).

Long before the Supreme Court's pronouncement in *Pate*, Illinois recognized that the denial of an opportunity to sustain a plea of insanity is itself a denial of the safeguard of due process. In *Brown v. People*, 8 Ill. 2d 540, 545 (1956), this court held that "it [is] the duty of the court, when a *bona fide* issue of sanity [is] raised, to determine that issue." See also *People v. Burson*, 11 Ill. 2d 360, 370 (1957). The failure to observe procedures adequate to protect a defendant's right not to be tried while unfit deprives him of due process. *People v. Murphy*, 72 Ill. 2d 421, 430 (1978).

Illinois jealously guards an incompetent criminal defendant's fundamental right not to stand trial. The comprehensiveness of our statutory provisions concerning fitness for trial, to plead or be sentenced serves to illustrate this point. See 725 ILCS 5/104—10 *et seq.* (West 1992). Indeed, the right not to stand trial while incompe-

tent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination. See 725 ILCS 5/104—11(a) (West 1992) (issue of fitness for trial, to plead, or to be sentenced may be raised by the defense, the State, or the court at any appropriate time before a plea is entered or before, during, or after trial); see also *Pate*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836. Furthermore, where it is shown that at the time of trial certain facts existed which, had they been known to the circuit court at the time of trial, would have raised a *bona fide* doubt of fitness, the issue of fitness may be properly raised in a petition for post-conviction relief. See *People v. Smith*, 44 Ill. 2d 82 (1969); *People v. McLain*, 37 Ill. 2d 173 (1967); *People v. Harris*, 113 Ill. App. 3d 663 (1983).

With these principles in mind, we consider the merits of defendant's due process claim. Defendant contends that the State's failure to disclose that it administered psychotropic medication to him during the course of trial deprived him of a fitness hearing and, thus, due process of law. The State does not dispute defendant's assertions concerning the medication but, instead, raises challenges designed either to defeat our consideration of the claim or to deny the grant of a new trial.

Examination of the record reveals that defendant's trial took place between August 31 and October 25, 1988. Entries on defendant's "Medication Log Sheet," which is included as an exhibit to the post-conviction petition, identify Tranxene as medication, and indicate the dates, times and by whom the medication was administered. According to the log sheet, Tranxene was generally administered to defendant three times daily—once in the morning, again at midday, and a third time in the evening. The first entry on the log sheet indicates that administration of the drug began July 16, 1988. After

the morning dosage on August 29, no medication is recorded as having been given again until September 2, when daily administration was resumed. No medication was given on the morning of September 27 and medication was "refused" on the evenings of October 13, 19, 20, and from October 22 through 24. No entries appear on the log sheet beyond the morning dosage administered on October 28, 1988.

Also included as an exhibit to the petition is the affidavit of Dr. James O'Donnell, a licensed pharmacist. In his affidavit, Dr. O'Donnell states that he has conducted extensive research on the effects of Tranxene and other drugs on the human body. He describes Tranxene as a "valium replacement/central nervous system depressant" used for the management of anxiety disorders or for short term relief of the symptoms of anxiety. Dr. O'Donnell states that the possible side effects of the drug are drowsiness, confusion, depression, nervousness and substantial disorientation. Taken at certain doses, Tranxene could affect any individual's ability to make certain decisions.

Additionally, we note defendant's affidavit in which he states that he was unaware that he was being medicated. In this appeal, defendant posits that the fact that he was unaware or could not remember that he was being given psychotropic drugs may itself reflect the severe effects of the drug on his mental processes. Finally, defense counsel's affidavit states that he was unaware that defendant was being given drugs throughout the course of trial.

As his first basis in support of a new trial, defendant offers this court's opinion in *People v. Brandon*, 162 Ill. 2d 450 (1994), which construed section 104—21(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21(a) (West 1992)). During the time of defendant's trial and direct appeal, section 104—21(a) provided:

"A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." Ill. Rev. Stat. 1991, ch. 38, par. 104—21(a).

In *Brandon*, a majority of this court observed that section 104—21(a) evinced a recognition by the General Assembly that psychotropic medication is an important signal that a defendant may not be competent to stand trial. Rejecting the State's arguments to the contrary, the court held that where a defendant is being medicated with psychotropic drugs, the court has no discretion to decide whether to have a fitness hearing. Rather, section 104—21(a) mandates a fitness hearing. Because defendant Brandon had been administered psychotropic drugs during the time of his trial and sentencing and the trial court, "in the exercise of its discretion," denied him a fitness hearing, reversal of the defendant's convictions was required.

More recently, we have reaffirmed the holding in *Brandon*. Further, since *Brandon*, this court has recognized that the legislature equates the administration of psychotropic drugs with a *bona fide* doubt of sanity. See *People v. Gevas*, 166 Ill. 2d 461 (1995); see also *People v. Kinkead*, 168 Ill. 2d 394 (1995).

The State rejects *Brandon* as applicable in this case. In support, the State points out that the underlying claim in *Brandon* was ineffective assistance of counsel. Here, since no ineffectiveness claim is asserted, the constitutional foundation for post-conviction relief is absent. That defendant was precluded from having a fitness hearing pursuant to section 104—21(a), the State contends, amounts to no more than a statutory violation not cognizable under the Post-Conviction Hearing Act.

True, the violation of a statute or rule of procedure which does not constitute a deprivation of constitutional rights may not be considered under the Post-Conviction Hearing Act. 725 ILCS 5/122—1 (West 1992); *People v.*

*Hangsleben*, 43 Ill. 2d 236, 239 (1969); *People v. Orndoff*, 39 Ill. 2d 96, 99 (1968). Further, the burden to establish such a deprivation rests on the defendant. *People v. Silagy*, 116 Ill. 2d 357, 365 (1987). Absent such a showing, a petition may be dismissed without an evidentiary hearing. *Silagy*, 116 Ill. 2d at 365. We believe, however, that defendant has met his burden.

As we have stated, the scope of the right not to be tried while unfit includes the right to an adequate procedure for inquiry into the issue of fitness. See *Murphy*, 72 Ill. 2d at 430. In *Pate*, the Court held that the Illinois court's failure to invoke the relevant statutory procedures deprived the defendant of an inquiry concerning his fitness to stand trial. Thus, the defendant suffered a due process violation.

We recognize that due process does not mandate any particular procedure for the inquiry; it requires merely that there be an adequate procedure to implement the right to an inquiry. See *Drope*, 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896. Thus, in this case, if, at the time of defendant's trial, the court had known that defendant was being administered psychotropic drugs, the court would have been duty bound to invoke adequate procedures which would have afforded defendant the opportunity for an inquiry on the issue of his fitness. See *Brandon*, 162 Ill. 2d at 459. The particular procedure to be invoked is purely by legislative design.

Here, the relevant statutory procedure provides for a fitness hearing. Although defendant's right to that particular procedure is wholly statutory, his right to inquiry concerning fitness flows from the due process guarantee. Compare *People v. House*, 202 Ill. App. 3d 893 (1990) (right to be present at trial is founded in constitution; therefore, absence of notice pursuant to statute presents constitutional question), and *People v. Culp*, 127 Ill. App. 3d 916 (1984) (noncompliance with Supreme

Court Rule 402 does not raise constitutional issue unless violation rendered defendant's plea involuntarily made), with *People v. Maniatis,* 297 Ill. 72 (1921) (speedy-trial provision which provides that trial be commenced within given time period not coextensive with general constitutional guarantee against arbitrary and oppressive delays; thus, violation of speedy-trial provision does not necessarily rise to level of constitutional dimension).

Here, as in *Pate,* because no procedure was invoked, defendant was denied inquiry into the issue of his fitness. Due process was thereby denied. As such, defendant's claim constitutes more than a statutory violation and is properly cognizable under the Post-Conviction Hearing Act.

As an additional challenge to defendant's claim, the State finds significant that the issue of defendant's fitness was not asserted either at trial or on direct appeal. In light of both defendant's and defense counsel's assertions of a lack of knowledge concerning defendant's being given the drugs, we find it not as significant. Further, to the extent that the State is suggesting waiver, we reject it out of hand. As we have stated, the right not to be tried while unfit is highly valued. Not even the failure to timely assert a fitness issue will cause the right to fall prey to the ordinary operation of procedural default. *McLain,* 37 Ill. 2d at 177; *Burson,* 11 Ill. 2d at 370.

The State next argues that the trial court, which observed defendant's demeanor at trial and when defendant took the stand, did not *sua sponte* order a fitness hearing.

We perceive the State's argument to mean that, based upon these facts, we may presume defendant's fitness. The argument is not novel; it has been previously considered and rejected by this court. See *Brandon,* 162 Ill. 2d at 459-60, citing *Pate,* 383 U.S. at 386, 15 L. Ed.

2d at 822, 86 S. Ct. at 842; see also *Kinkead*, 168 Ill. 2d at 409. On these facts, we do so again today.

Finally, the State asserts that at a hearing on defendant's post-sentencing motion, defense counsel specifically testified that there was no indication that defendant was under the influence of drugs at the time he waived jury sentencing.

Notwithstanding counsel's perception, it remains an unrebutted fact that defendant was being medicated with psychotropic drugs during the course of criminal proceedings against him. Counsel's perception alters neither that fact nor the resulting requirement for a fitness determination.

In his post-conviction petition, defendant has provided documentation to support his claim that he was administered psychotropic medication during the period of his plea, trial and sentencing. Pursuant to *Brandon*, *Gevas*, and *Kinkead*, the administration of these drugs to defendant raised a *bona fide* doubt of his fitness to stand trial. Thus, a fitness determination was constitutionally required.

Incidentally, since our decisions in *Brandon*, *Gevas* and *Kinkead*, the legislature has amended section 104—21(a) to provide that no fitness hearing is required unless the court finds that there is a *bona fide* doubt of the defendant's fitness. Pub. Act 89—428, § 605, eff. December 13, 1995, amending 725 ILCS 5/104—21(a). The State does not suggest that the statute, as amended, has application in these proceedings.

Nevertheless, we find it appropriate to note the rule that amendatory acts which are procedural in nature have retrospective operation for matters which are *pending* on the effective date of the amendment or are subsequently filed. 82 C.J.S. *Statutes* § 432 (1953); see also *Hogan v. Bleeker*, 29 Ill. 2d 181, 184 (1963). As this is a collateral matter, the amendment, though proce-

dural in nature, does not apply. *Cf. Eddmonds,* 143 Ill. 2d at 523 (post-conviction petitioner not entitled to fitness hearing under section 104—21 of statute since he was not receiving medication when that statute became effective). Further, while the General Assembly can pass legislation to prospectively change a judicial construction of a statute if it believes that the judicial interpretation was at odds with legislative intent, it cannot effect a change in that construction by a later declaration of what it had originally intended. See *People v. Rink,* 97 Ill. 2d 533, 541 (1983); *In re Marriage of Cohn,* 93 Ill. 2d 190, 202-04 (1982); *Roth v. Yackley,* 77 Ill. 2d 423, 428-29 (1979).

It remains only to state what remedy is due this defendant. Where there exists a *bona fide* doubt of fitness and no fitness hearing is held, a new trial is the appropriate remedy. Defendant had no opportunity for such a hearing. Therefore, defendant's convictions must be reversed, and this cause remanded for a new trial.

The State argues that the "automatic reversal" rule of *Brandon, Gevas* and *Kinkead* is flawed and should be abandoned. The State suggests that a more prudent approach would involve a remand for inquiry into the properties of the particular drug, whether it was properly prescribed and whether the dosage administered could have affected the defendant's ability to understand the nature and purpose of the proceedings. If the defendant is able to demonstrate that the administered medication rendered him unfit for trial, he would then be entitled to a new trial. A new trial based on any less of a showing, the State asserts, would result in a tremendous waste of judicial and prosecutorial resources.

We agree with the State that inquiry should properly be had on the issue of the nature and properties of the drug, its dosage and effect on the defendant's ability to

understand and participate in his defense. The point at which we diverge is the validity of such an "after-the-fact" determination. We note here, as we did in *Gevas*, that "there are 'inherent difficulties' in attempting a retrospective '*nunc pro tunc* determination' of defendant's mental competency even 'under the most favorable circumstances.'" *Gevas*, 166 Ill. 2d at 471, quoting *Drope*, 420 U.S. at 183, 43 L. Ed. 2d at 119-20, 95 S. Ct. at 909.

Moreover, "automatic reversal" for the failure to have a fitness hearing is not a new concept in Illinois. Even before *Brandon* and its progeny, where a requisite fitness hearing was not provided, reversal was deemed the appropriate remedy. See, *e.g.*, *McLain*, 37 Ill. 2d 173; *People v. Bender*, 27 Ill. 2d 173 (1963); *Burson*, 11 Ill. 2d 360; *Brown*, 8 Ill. 2d 540. Finally, we are cognizant of the costs and burdens which, as a result of this disposition, must be borne by our criminal justice system. However, not even our greater interest in the finality of judgments can outweigh the safeguarding of a defendant's right not to be tried while unfit.

At the time of defendant's trial and appeal, section 104—21(a), as construed in *Brandon*, *Gevas* and *Kinkead*, required that defendant be given a fitness hearing. As we have rejected any notion that a *nunc pro tunc* determination of fitness can provide the necessary reliability (see *Brown*, 8 Ill. 2d 540; see also *Pate*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836), consistent with the reasoning and holdings in *Brandon*, *Gevas* and *Kinkead*, reversal of defendant's convictions and sentence is required.

As an alternative basis to support the grant of a new trial, defendant contends that the State, by its failure to disclose information concerning administration of the medication, violated the dictates of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963)

(holding that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment). Given our determination that defendant is entitled to a new trial based upon a violation of his right to an inquiry on the issue of his fitness, we do not address defendant's *Brady* claim. But see *People v. Sanchez*, 169 Ill. 2d 472 (1996).

## CONCLUSION

Defendant has established a constitutional deprivation. Thus, dismissal of his post-conviction petition was not proper. The order of dismissal is therefore reversed, and the cause is remanded with directions to set aside the conviction and to grant a new trial.

*Reversed and remanded with directions.*

JUSTICE MILLER, dissenting:

I do not agree with the majority's conclusion that the defendant is entitled to relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 through 122—7 (West 1992)). A post-conviction remedy is available only if the defendant demonstrates a substantial deprivation of constitutional rights. 725 ILCS 5/122—1, 122—2 (West 1992); *People v. Ruiz*, 132 Ill. 2d 1, 9 (1989). Because the present claim lacks a constitutional foundation, it should be dismissed.

For the reasons stated in my previous dissents, I continue to believe that the right provided by section 104—21(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—21(a) (West 1992)) cannot be equated with a *bona fide* doubt of fitness and is statutory rather than constitutional in force and effect. *People v. Birdsall*, 172 Ill. 2d 464 (1996) (Miller, J., dissenting, joined by Bilandic, C.J., and Heiple, J.); *People v. Kinkead*, 168 Ill. 2d 394, 417 (1995) (Miller, J., dissenting, joined by Bilandic, C.J., and Heiple, J.); *People v. Gevas*, 166 Ill.

2d 461, 472 (1995) (Miller, J., dissenting, joined by Bilandic, C.J., and Heiple, J.); *People v. Brandon*, 162 Ill. 2d 450, 461 (1994) (Miller, J., dissenting, joined by Bilandic, C.J., and Heiple, J.). While the defendant correctly observes that the arbitrary denial of a statutory right may give rise to a due process violation (*Hicks v. Oklahoma*, 447 U.S. 343, 65 L. Ed. 2d 175, 100 S. Ct. 2227 (1980)), that principle is of no assistance to him here. The defendant never sought a hearing under section 104—21(a), and the trial judge in this case did nothing that was contrary to the terms of the statute. It should be noted that the defendant does not contend that counsel was ineffective for failing to raise this issue during the trial proceedings.

The right now being asserted by the defendant is wholly statutory and therefore cannot form the basis for post-conviction relief. By finding a constitutional deprivation where none exists, today's decision grants a windfall to post-conviction litigants, who now can raise for the first time in a post-conviction petition matters that should have been raised instead in the original trial proceedings.

CHIEF JUSTICE BILANDIC and JUSTICE HEIPLE join in this dissent.