THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LILLIE MAE JAMERSON, Defendant-Appellant.

Third District    No. 3—96—1020

Opinion filed October 23, 1997.—Rehearing denied December 16, 1997.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Paul Mangieri, State's Attorney, of Galesburg (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Following a bench trial, the defendant, Lillie Mae Jamerson, was found guilty but mentally ill of three counts of forgery and sentenced to a four-year term of imprisonment. On appeal, defendant contends that: (1) the cause should be remanded for a new trial because the trial court failed to conduct a fitness hearing despite evidence that defendant was taking psychotropic drugs under medical direction at the time of trial and sentencing, (2) her sentence of four years' imprisonment was excessive and an abuse of the trial court's discretion given the mitigating circumstances, and (3) the mittimus should be amended to reflect four, not three, days' credit against her sentence.

## FACTS

At trial, the State established that on October 10, 1995, defendant knowingly delivered three forged checks drawn on the First Galesburg National Bank, which was not then in business. Defendant purchased saddle straps, three pairs of boots, a Western-style coat, perfume and ten 50-pound bags of horse feed from a store in Galesburg called Pinebrook Western, and horse supplies, barbed wire and a go-cart from the Galesburg Farm King, where she paid with two checks. Defendant signed the checks "Mary Sherman" and told the police officer who arrested her that Mary had asked her to purchase feed for Mary's horses. Defendant also claimed that Mary gave her permission to purchase gifts for her (defendant's) children.

Mary Sherman testified that she met defendant two years prior to the check forgeries when defendant came to her home to sell insurance. Sherman testified that she and the defendant were not friends and that she had not given the defendant permission to sign checks on her behalf.

Dr. Shirley Eyman, defendant's treating psychiatrist, testified that she met defendant in April 1994 for the purpose of conducting a psychiatric evaluation and has been treating her regularly since then. Dr. Eyman diagnosed defendant as suffering from adjustment disorder with depressed and anxious mood. Defendant told Dr. Eyman that prior to the offense she had stopped taking her medication, had gone three or four days with little or no sleep, and had heard

voices and thought she was Mary Sherman. Although Dr. Eyman was unable to confirm that defendant suffered from brief reactive psychosis and multiple personality disorder, she testified that due to defendant's mental state at the time of the offense, defendant's ability to understand the criminality of her conduct was questionable. Finally, Dr. Eyman testified that, at the time of trial, defendant was taking psychotropic medication called Mellaril.

Defendant testified that Dr. Eyman had initially prescribed three medications—Mellaril, Trazodone and Prozac—but that she was taking only Mellaril at the time of trial. Defendant testified she had no recollection of the incident involving the forged checks, although she acknowledged that she recognized her handwriting on the checks. The last thing defendant remembered was driving to Minnesota with her son. Defendant explained that in order to make the drive, she stopped taking her medication because the medication made her sleep. Without her medication, defendant went without sleep for three or four days, including October 10, 1995, the day defendant delivered the forged checks.

Dr. Anthony Caterine, a licensed psychiatrist, was called as a rebuttal witness by the State and he testified that he examined defendant prior to trial in order to determine if she was insane when she forged the checks. During the interview, he learned that defendant was taking Trazodone, Prozac and Mellaril, but testified that she appeared coherent and was not delusional or acting oddly. In Dr. Caterine's opinion, defendant suffered from chronic depression, personality disorder involving difficulty adapting to life's stresses and polysubstance abuse. However, Dr. Caterine did not believe that defendant was legally insane or that she lacked the ability to appreciate the criminality of her conduct at the time of the offense.

At the close of testimony, the court found defendant guilty but mentally ill of the three charges of forgery.

## ANALYSIS

Defendant first contends the trial court erred when it failed to conduct a fitness hearing despite evidence that defendant was taking psychotropic drugs at the time of trial and sentencing. Because the applicable statute was amended twice since defendant's offense, we cannot reach the merits of defendant's contention without first determining which version of the statute should be applied in the instant case.

The original statute, which was in effect at the time of defendant's offense, provides as follows:

"A defendant who is receiving psychotropic drugs or other med-

ications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1994).

The first amendment to the statute, which became effective prior to defendant's trial, was contained in Public Act 89—428 and provided as follows:

"A defendant who is receiving psychotropic drugs under medical direction is entitled to a hearing on the issue of his or her fitness while under medication; however, no hearing is required unless the court finds there is a bona fide doubt of the defendant's fitness." 725 ILCS 5/104—21(a) (West Supp. 1995) (amended by Pub. Act 89—428, art. VI, § 605, eff. December 13, 1995).

In their initial briefs, both defendant and the State acknowledged that this amendment to the statute was applicable to this case. While this appeal was pending, however, the Illinois Supreme Court held Public Act 89—428 unconstitutional because it violated the "single subject rule" of Article IV, section 8(d), of the Illinois Constitution. *Johnson v. Edgar*, 176 Ill. 2d 499, 680 N.E.2d 1372 (1997). In oral argument before this court, both sides agreed that the first amendment to the statute no longer applied to this case in light of the holding in *Johnson*, but they disagreed that the original statute applies.

Citing principles of statutory construction, defendant contends that the original statute should apply. If an amendatory act is held to be invalid, the pre-amended statute remains in full force. 1A N. Singer, Sutherland on Statutory Construction § 22.37 (5th ed. 1993). A judicial decision declaring a statute unconstitutional should be applied retroactively as the unconstitutional statute is void *ab initio* and the pre-amended statute remains in full force. *People v. Gersch*, 135 Ill. 2d 384, 553 N.E.2d 281 (1990).

The State, on the other hand, argued for the first time during oral argument that the controlling statute is not the original statute, but the recent second amendment to the statute which took effect on December 31, 1996, and provides as follows:

"A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21(a) (West 1996).

Although the second amendment became effective after defendant's trial, sentencing and notice of appeal, it arguably applies to defendant's case pending on appeal.

■ In the absence of legislative intent to the contrary, when the legislature amends the law while an appeal is pending, the reviewing court is to apply the law in effect at the time of the decision. *Johnson*, 176 Ill. 2d 499, 680 N.E.2d 1372; *People v. Stothoff*, 208 Ill. App. 3d

500, 567 N.E.2d 420 (1990). Amendatory acts that are procedural in nature apply retrospectively to matters that are pending on the effective date of the amendment. *People v. Nitz*, 173 Ill. 2d 151, 670 N.E.2d 672 (1996). This appeal was pending on December 31, 1996, when the second amendment to the statute became effective. The question presented, therefore, is whether the second amendment is procedural and can be applied retroactively or whether the original statute governs. At this court's request, supplemental briefs were filed on this issue.

■ The State relies primarily on *Nitz* for the proposition that the second amended statute is procedural in nature and should be applied retroactively. In *Nitz*, the Illinois Supreme Court suggested in *dicta* that the first amendment to the statute was procedural in nature. *Nitz*, 173 Ill. 2d 151, 670 N.E.2d 672. Based on this isolated reference and other comments taken out of context, the State contends that since the first amendment to the statute was procedural, by extension, the second amendment to the statute is also procedural.

The State's reasoning is flawed. *Nitz* involved a postconviction appeal and is not binding precedent on the instant direct appeal. In addition, the State relies on *dicta* which is not binding authority nor does it have precedential value. See *Heck v. Central Illinois Light Co.*, 152 Ill. 2d 401, 604 N.E.2d 939 (1992); *People v. Palmer*, 104 Ill. 2d 340, 472 N.E.2d 795 (1984). More importantly, however, the State misconstrues the holding in *Nitz*. *Nitz* held that the right to have an inquiry concerning fitness is part and parcel of the right not to be tried while unfit and that Illinois jealously guards the fundamental right of an incompetent defendant not to stand trial. *Nitz*, 173 Ill. 2d 151, 670 N.E.2d 672. The *Nitz* court approvingly cited cases which held that a psychotropically medicated defendant was entitled to a fitness hearing. *Nitz*, 173 Ill. 2d 151, 670 N.E.2d 672, citing *People v. Brandon*, 162 Ill. 2d 450, 643 N.E.2d 712 (1994); *People v. Gevas*, 166 Ill. 2d 461, 655 N.E.2d 894 (1995); *People v. Kinkead*, 168 Ill. 2d 394, 660 N.E.2d 852 (1995). *People v. Birdsall*, 172 Ill. 2d 464, 670 N.E.2d 700 (1996), decided on the same day as *Nitz*, also affirmed the authority of the *Brandon* line of cases.

*Brandon* held that the fundamental constitutional nature of the fitness requirement imposes a duty upon the court to conduct a fitness hearing. *Brandon*, 162 Ill. 2d 450, 643 N.E.2d 712. Moreover, the clear and unambiguous language of the statute expressly provides that a defendant is "entitled" to receive a fitness hearing. *Brandon*, 162 Ill. 2d 450, 643 N.E.2d 712. The court in *Gevas* cited *Brandon* extensively and stated that the legislative enactment of the original

statute "equated the administering of psychotropic medication to a defendant with a *bona fide* doubt as to fitness to stand trial." *Gevas,* 166 Ill. 2d at 469, 655 N.E.2d at 899. In *Kinkead,* the court reiterated earlier precedent establishing that a defendant's use of psychotropic drugs is a strong signal that the fitness of the defendant is in issue and that "defendant is entitled to a fitness hearing as a matter of right." *Kinkead,* 168 Ill. 2d at 414, 660 N.E.2d at 861.

In light of the importance the legislature placed on the right of an accused taking psychotropic medication to receive a fitness hearing under the original statute, and in accordance with binding precedent, we cannot be persuaded that the second amendment to the statute is procedural. Instead, we find that the second amended statute effectuated a substantive change in the law and cannot be applied retroactively.

There is a presumption that an amendatory act effectuating substantive changes is limited to prospective application so as not to interfere with vested substantive rights. *Rivard v. Chicago Fire Fighters Union, Local No. 2,* 122 Ill. 2d 303, 522 N.E.2d 1195 (1988); *Maiter v. Chicago Board of Education,* 82 Ill. 2d 373, 415 N.E.2d 1034 (1980). The preference for prospective application of substantive amendments is codified in the Statute on Statutes (5 ILCS 70/0.01 *et seq.* (West 1996)), which states in pertinent part:

> "No new law shall be construed to [affect] *** any right accrued, or claim arising before the new law takes effect ***." 5 ILCS 70/4 (West 1996).

The issue of prospective application of the first amendment to the statute was raised in *Birdsall. Birdsall,* 172 Ill. 2d 464, 670 N.E.2d 700. The court noted that the first amended statute, which became effective during the pendency of that case, did not apply retroactively and declined to comment regarding its effect on future cases after the effective date of the act. Similarly, we hold that the second amendment to the statute, which became effective during the pendency of this appeal, does not apply.

The second amended statute cannot be applied retroactively as it effectuated a substantive change in the law and eliminated a legislative entitlement. The original statute entitled a psychotropically medicated defendant to a fitness hearing and in effect equated the use of psychotropic drugs with a *bona fide* doubt of the defendant's fitness to stand trial. The second amendment to the statute takes away the presumption of unfitness and gives the court discretion in ordering a fitness hearing. Under the current law, psychotropically medicated defendants shall not be presumed to be unfit solely by virtue of receipt of those drugs.

In the instant case, retroactive application of the second amended statute would result in the deprivation of defendant's accrued right to a mandatory fitness hearing. Defendant contends that her right to a fitness hearing accrued at the beginning of her bench trial on May 22, 1996, and again on the date of her sentencing hearing, August 28, 1996, both of which preceded the effective date of the second amended statute, December 31, 1996. We agree.

We hold that the second amendment to the statute, which became effective December 31, 1996, operates to deprive defendant of a substantive right and therefore cannot be applied retroactively. We find that the original statute applies and that defendant is entitled to a fitness hearing.

■ Having determined that the original statute applies to the instant case, we now determine if defendant's conviction should be automatically reversed or if this case should be remanded for a limited fitness hearing.

In *People v. Burgess*, 176 Ill. 2d 289, 680 N.E.2d 357 (1997), the Illinois Supreme Court departed from its previous practice of automatic reversal in cases where psychotropically medicated defendants were not given fitness hearings under the original statute. The unusual circumstances presented in *Burgess* warrant a closer look. Because it was unclear from the record whether the defendant had ingested psychotropic drugs, the *Burgess* court remanded for a limited hearing on this factual issue. The trial court, however, exceeded the scope of this limited remand, allowed expert testimony regarding the impact of the drugs on defendant, and found defendant was fit to stand trial. Although the trial court's finding of fitness went beyond the limited factual basis of the remand, the supreme court decided not to ignore the evidence presented at the remand hearing or the trial court's finding of fitness.

Acknowledging the precedent set by *Brandon*, *Gevas*, *Kinkead*, *Birdsall*, and *Nitz*, the *Burgess* court nonetheless found sufficient reason to depart from these earlier cases and make a case-specific inquiry into the psychotropic drugs administered to defendant Burgess. The court recognized the difficulty in determining the degree of mental functioning enjoyed by the defendant long after the conclusion of the underlying proceedings, but found the trial court's retrospective determination of fitness to be proper. Based on the evidence presented at the remand hearing, the *Burgess* court noted that it should not be automatically assumed that every psychotropic drug will inevitably render the person taking it unfit for trial or sentencing and concluded that retrospective hearings are sometimes proper. *Burgess*, 176 Ill. 2d 289, 680 N.E.2d 357.

We agree with the instant defendant that *Burgess* did not announce a new procedure for all cases where defendants used psychotropic drugs at the time of trial and/or sentencing. However, we are persuaded by *Burgess* that automatic reversal is not always the appropriate remedy and that sometimes defendant's fitness can be determined in a limited remand.

Here, the facts are particularly suitable for a case-specific fitness hearing. There was no dispute that defendant was taking psychotropic drugs before and during trial and sentencing. The evidence showed that defendant's therapeutic medications helped her function normally and that her behavior was affected when she stopped taking her medication. In fact, the check forgeries occurred while defendant was off her medication. While the positive therapeutic effect of defendant's medication does not conclusively determine defendant's fitness, it is a factor to be considered. Also, because defendant raised the affirmative defense of insanity, two psychiatrists evaluated her mental state and sanity at the time of the offense to determine if she could appreciate the criminality of her conduct. The separate issue of her fitness to stand trial while under psychotropic medication was not addressed. For this reason, we remand for a limited fitness hearing to determine whether defendant's medication impaired her ability to understand and assist in her defense.

For the reasons stated above, we remand for a limited fitness hearing to determine defendant's fitness to stand trial. Because defendant raises other issues that may be affected by the trial court's determination of fitness, we decline to address them at this time.

Remanded with directions.

HOMER and McCUSKEY, JJ., concur.