NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                 Docket No. 76618--Agenda 14--May 1996.

      THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DeWAYNE C.

                            BRITZ, Appellant.

                     Opinion filed October 18, 1996.

     JUSTICE FREEMAN delivered the opinion of the court:

     In 1985, petitioner, Dewayne C. Britz, was charged by

information in Sangamon County with murder, aggravated kidnapping,

aggravated criminal sexual assault, armed robbery, theft and

concealment of a homicidal death. Following a jury trial,

petitioner was convicted of all charges and sentenced to death.

This court affirmed petitioner's conviction and sentence on direct

appeal. People v. Britz, 123 Ill. 2d 446 (1988). The United States

Supreme Court later denied petitioner's writ of certiorari. Britz

v. Illinois, 489 U.S. 1044, 103 L. Ed. 2d 242, 109 S. Ct. 1100

(1989).

     Petitioner subsequently filed a pro se petition under the

Post-Conviction Hearing Act in the circuit court of Sangamon

County. See Ill. Rev. Stat. 1985, ch. 38, par. 122--1 et seq. After

being twice amended, the petition was dismissed by the trial court

without an evidentiary hearing. Petitioner now appeals from the

dismissal pursuant to Supreme Court Rule 651. 134 Ill. 2d R. 651.

Based on the following considerations, we affirm.

                                  ISSUES

     Petitioner raises essentially four issues on appeal: (1)

whether at trial he was denied the effective assistance of counsel

guaranteed under the sixth amendment (U.S. Const., amend. VI); (2)

whether he was denied this same right at sentencing; (3) whether he

made a substantial showing that the right was violated such that he

was entitled to an evidentiary hearing; and (4) whether fundamental

fairness and the orderly administration of justice require that a

fitness hearing be held to determine if medication he was taking

one month prior to the commencement of trial affected his defense.

                            STANDARD OF REVIEW

     On review of matters decided under the Post-Conviction Hearing

Act, determinations of the trial court will not be disturbed unless

manifestly erroneous. See People v. Whitehead, 169 Ill. 2d 355

(1996); People v. Silagy, 116 Ill. 2d 357, 365 (1987).

                                BACKGROUND

     At trial, the State presented essentially the following

evidence. On January 16, 1985, petitioner struck his former

employer in the head with a pistol in an attempt to rob him and

then drove off with the employer's truck. Petitioner later

kidnapped, sexually assaulted and fatally shot Mimi C. Covert.

Covert had offered petitioner a ride after his employer's truck

stalled on the highway.

     After committing the crimes, petitioner purchased a 12-pack of

beer and a half-pint of whiskey and drove to a motel where he

checked into a room and fell asleep. Pursuant to their

investigation, police later arrived at the motel, questioned

petitioner and placed him under arrest. A police search yielded

Covert's fishing license, her car keys, and the murder weapon.

After petitioner was taken into custody, he gave police a

statement, informing them where Covert's body could be found.

     Police officers and the motel clerk testified that, shortly

after the crimes, petitioner had not appeared to be under the

influence of either alcohol or drugs. Petitioner's former employer

testified also that he had observed petitioner throughout the

course of the day prior to the crime, and petitioner had not

appeared to be under the influence of either alcohol or narcotics.

     Petitioner's statement to police that he had committed the

crimes and left Covert's body on the side of a road was introduced

into evidence. A witness, who had been housed previously with

petitioner in the Sangamon County jail, also testified that

petitioner had admitted to him that he had murdered and raped

Covert, and consumed only two beers but no drugs on the night of

the murder.

     Defendant attempted to present three expert witnesses to raise

an "insanity defense based upon a chronic disease predicated on the

voluntary ingestion of alcohol or drugs." Britz, 123 Ill. 2d at

457. The State, however, filed a motion in limine to prevent the

three experts from testifying because their reports contained

plaintiff's self-serving hearsay statements regarding the type and

quantity of drugs and alcohol he had consumed on the night of the

crimes.

     Following a hearing, the trial court ruled that the experts

could only testify to any conclusions they reached through

objective testing; any opinions based on defendant's statements to

them would be inadmissible. After objecting, defense counsel

presented an offer of proof regarding the proposed testimony of the

expert witnesses. Britz, 123 Ill. 2d at 458-60.

     The offer of proof showed that Dr. Leslie Fryans, a

psychologist, would have testified that petitioner suffered from

both a "long-standing chronic" substance abuse disorder and a

borderline personality disorder. Fryans opined that based on these

mental defects, petitioner would have been unable to conform his

conduct to the constraints of the law on the night of the crimes.

See Ill. Rev. Stat. 1985, ch. 38, par. 6--2(a). Fryans drew these

conclusions after administering objective assessment tests to

petitioner and learning his version of the incident and his history

of chronic substance abuse. Britz, 123 Ill. 2d at 458-59.

     Petitioner also offered the testimony of Joan Stockhoff, a

clinical pharmacist, and Dr. Thomas Mulry, a specialist in chemical

dependency. Stockhoff would have testified that under the direction

of Dr. Mulry, she conducted a drug-history interview with

petitioner and learned from him that he had a history of substance

abuse. Mulry would have testified that he reviewed Stockhoff's

report and interviewed petitioner. Based upon this information,

Mulry formed the opinion that petitioner was chemically dependent

and alcoholic, that his dependency was chronic and permanent, that

he was intoxicated on the night of the crimes and possibly could

have had periods of loss of control as well as periods of control.

Britz, 123 Ill. 2d at 459-60.

     The trial court again ruled that the experts' opinion

testimony was inadmissible "if based in material part" on his

statements to them regarding his drug and alcohol history and his

ingestion of chemicals on the night of the crimes. Britz, 123 Ill.

2d at 459-60. As a result, none of petitioner's three expert

witnesses testified during the guilt or innocence phase of trial.

Petitioner presented, however, five witnesses who testified

regarding his use of alcohol and drugs prior to the incident and

the observed effect of those chemicals on him. The trial court gave

the jury no insanity instruction, finding that no evidence of

insanity had been shown. Petitioner was ultimately convicted of all

charges and found eligible for the death penalty.

     During the mitigation phase of sentencing, petitioner's three

experts and two family members testified. The three experts

testified substantially similar to their testimony presented in the

offer of proof. Defense counsel, however, did not ask Dr. Fryans to

state an opinion regarding whether petitioner suffered from an

extreme emotional or mental disturbance at the time of the murder.

Defense counsel also did not ask Fryans to explain substance abuse

and borderline personality disorders to the jury.      The State

presented the testimony of Dr. Philip Bornstein, a psychiatrist,

and Kenneth Imhoff, a clinical psychologist, in rebuttal. Based on

their examinations of petitioner, a review of police reports, the

report of an associate, petitioner's statement, and newspaper

reports, they testified that petitioner was not suffering from a

mental or emotional disturbance at the time of the crime. Bornstein

also testified that in his opinion petitioner was not intoxicated,

mentally retarded or suffering from a mental disease or defect at

the time of the crimes. Bornstein agreed with Fryans that

petitioner suffered from a personality disorder, but he defined it

as antisocial.

     During argument, the prosecutor specifically drew attention to

the fact that the statutory mitigating factor of commission of the

crime under extreme mental or emotional disturbance was not shown

by petitioner's evidence, but was negated by the State's evidence.

     Following deliberations, the jury found no mitigating factors

sufficient to preclude the imposition of death, and petitioner was

sentenced to death.

     On direct appeal, an issue was raised concerning the

admissibility of petitioner's three expert witnesses' testimony.

This court ruled that the testimony was properly excluded by the

trial court because the experts did not rely on any reports

regarding the issue of his sanity, save petitioner's statements to

them. Britz, 123 Ill. 2d at 462-63.

     After filing a pro se petition in 1989, petitioner filed an

amended petition for post-conviction relief and appointment of

counsel in 1992. In June 1993, petitioner filed a second-amended

petition for post-conviction relief. Petitioner alleged that trial

counsel was ineffective for failing to provide his experts with

independent evidence to support the experts' opinions at trial and

sentencing. Petitioner also alleged that trial counsel was

ineffective for failing to elicit an opinion from Fryans that

petitioner suffered from an extreme mental or emotional disturbance

and failing to ask Fryans to explain borderline personality and

substance abuse disorders to the jury.  Included with the petition

were documents pertaining to petitioner's history of drug abuse and

treatment and Illinois Department of Corrections records pertaining

to this offense. Also included were affidavits from Dr. William Kip

Hillman, a clinical psychologist, and petitioner's mother and

sister.

     Subsequent to the filing of the petition, the trial court

directed petitioner's counsel to depose petitioner's trial counsel,

Mike Vonnahmen and Jim Pappas, and his primary psychological

expert, Dr. Fryans. Following a review of the petition and this

information, the trial court found, inter alia, that the failure of

trial counsel to provide corroboration of petitioner's drug usage

history to the experts did not prejudice the defense; and that the

sentencing result was unlikely to have been any different even if

trial counsel had presented the indicated mitigation evidence. The

trial court accordingly dismissed the second-amended petition.

Petitioner filed a motion for reconsideration which included

affidavits from one of his former high school teachers and two high

school administrators. The trial court denied the motion for

reconsideration. This appeal followed.

                                 ANALYSIS

             I. Ineffective Assistance of Trial Counsel During

                           Guilt-Innocence Phase

     The Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38,

par. 122--1 et seq.) provides a remedy to criminal defendants who

claim that substantial violations of constitutional rights occurred

in their trial. A proceeding under the Act is not an appeal, but a

collateral attack on a prior conviction and sentence. People v.

Mahaffey, 165 Ill. 2d 445, 452 (1995). The purpose of the

proceeding is to permit inquiry into constitutional issues involved

in the original conviction that have not already been adjudicated

or could have been. Whitehead, 169 Ill. 2d at 370.

     Petitioner contends that he was denied the effective

assistance of counsel guaranteed by the sixth amendment at trial.

Petitioner claims that trial counsel was ineffective for failing to

provide his experts with corroborating data to support their

opinions at trial.

     During his deposition at the post-conviction stage, Jim

Pappas, one of petitioner's trial attorneys, testified that trial

counsel knew prior to trial about the importance and necessity of

providing corroborative documentation to buttress expert witnesses'

testimony. Pappas testified that both he and Mike Vonnahmen,

petitioner's other trial attorney, believed that it was doubtful

that the insanity instruction would be given by the trial court

because Fryans' opinion was based solely upon petitioner's

statements. Pappas could not recall, but he believed that Vonnahmen

had subpoenaed any available records. Pappas also believed that

Vonnahmen had talked to petitioner's relatives and investigated any

"past problems" that petitioner had.

     During his deposition, Vonnahmen confirmed Pappas'

recollection. Vonnahmen testified that he conducted no

investigation to locate information that would corroborate expert

opinion that petitioner suffered from a disorder. Vonnahmen

acknowledged that, although he knew petitioner had a prior criminal

record and had been incarcerated, he did not subpoena any related

documents or any hospital, psychiatric or psychological records.

Vonnahmen also acknowledged that he did not obtain the following

specific documentation which was included with the post-conviction

petition:

               (a) a police report and hospital admission report

          dated May 30, 1980, stating that petitioner was found on

          a highway suffering from an apparent drug overdose from

          glue, possibly "speed" and other controlled substances;

               (b) a hospital report dated August 2, 1980, which

          indicated that petitioner consumed various drugs;

               (c) court records from an unrelated 1980 case,

          indicating that pursuant to court order, petitioner was

          evaluated by Treatment Alternatives to Street Crimes

          (T.A.S.C.) to determine whether he was a drug addict,

          that he had a history of substance abuse, and was

          subsequently determined to be a drug addict displaying a

          "[c]lassic poly-drug abuse pattern [sic] anything and

          everything";

               (d) additional records, indicating that petitioner

          received probation conditioned upon successful completion

          of a T.A.S.C. residential drug treatment program;

               (e) T.A.S.C. records indicating that petitioner

          suffered from family and living situation problems, had

          lost self-respect, felt insecure and relied on drugs for

          support;

               (f) Department of Corrections records indicating

          that between November 1, 1982, and June 7, 1983,

          petitioner underwent five psychiatric evaluations, and

          stating, in September 1985, that he had

          "[m]ental/[p]syche" problems and was suicidal from 1979

          to 1984.

     Dr. Fryans was shown these documents during his deposition.

Fryans testified that if the documents had been provided to him by

trial counsel before petitioner's trial in 1985, he would have

relied on the documents to support his opinion that petitioner

suffered from substance abuse and borderline personality disorders

at the time of the crimes.

     The State responds initially that this claim is waived for

failure to raise it on direct appeal. According to the State, the

trial court's ruling, precluding the experts' opinion testimony at

trial, was based on the lack of any independent bases for their

opinions, which was apparent at trial.

     The State additionally argues that the evidentiary basis for

the claim was not only available, but was, in part, before this

court on direct appeal. The State directs attention to this court's

statement on direct appeal that one of petitioner's experts had not

reviewed documentation memorializing petitioner's drug

rehabilitation history. See Britz, 123 Ill. 2d at 459, 461-62. The

State contends that Britz also referred to petitioner's taped

statements to police, his treatment in a drug rehabilitation

center, and the "observations and statements" of petitioner's

friends and family, including that of his sister, who testified at

trial that petitioner used alcohol and marijuana everyday for at

least a year prior to the crimes. See Britz, 123 Ill. 2d at 455-56,

459-62. According to the State, the legal and evidentiary bases for

the claim were thus apparent at the time of the direct appeal.

     It is well established that determinations of the reviewing

court on direct appeal are res judicata as to issues actually

decided and issues that could have been presented on the direct

appeal, but were not, are deemed waived. See People v. Albanese,

125 Ill. 2d 100, 105 (1988); Silagy, 116 Ill. 2d at 365; People v.

French, 46 Ill. 2d 104 (1970). Application of the waiver rule is

relaxed, however, in instances where the facts relating to the

claim do not appear on the face of the original appellate record

and could not have been supplemented to that record under Supreme

Court Rule 329. Whitehead, 169 Ill. 2d at 372. As a matter of

clarification, it is not so much that such a claim "could not have

been presented" or "raised" on direct appeal, but rather that such

a claim was incapable of being considered by the reviewing court

because the claim's evidentiary basis was de hors the record.

Whitehead, 169 Ill. 2d at 372. The exception recognizes that the

rule of waiver ought not preclude such claims. Whitehead, 169 Ill.

2d at 372.

     The trial record was not made a part of the record in this

post-conviction appeal. However, according to the trial court's

order dismissing the second-amended post-conviction petition, the

following testimony was presented during the mitigation phase at

sentencing. Petitioner's mother testified that when petitioner was

a teenager she noticed that he was developing a problem with

alcohol and drugs. According to petitioner's mother, at that time,

his main problem was glue sniffing. She testified that she had

taken him to three different drug treatment facilities--T.A.S.C.,

Ryerson Center, and Gateway Foundation-- where he resided for

several weeks. She also testified that five years earlier,

petitioner had been hospitalized for attempting to commit suicide

by smoking marijuana and taking pills. She further related that the

main drug petitioner used at the age of 13 was marijuana.

Petitioner's mother additionally testified that petitioner acted

fine when he was not on drugs, but acted "very, very strange" when

he was on drugs.    

     Petitioner's sister testified also at sentencing that she was

aware that her family had sought professional help for petitioner

when he was a teenager and that they had taken him to Phoenix 7 (an

out-patient facility), T.A.S.C., and Gateway. She testified that

petitioner was aggressive when on drugs and calm when he was not.

     Based on our review of the record, it is clear that the claim

that trial counsel failed to provide corroborative data to support

the experts' opinions at trial was one which could have been

presented and considered on direct appeal.

     First, the direct appeal opinion reflects that the alleged

deficiency, itself, was clearly apparent at that time. Second,

the trial court record includes evidence of several available

independent corroborative bases on which the experts could have

relied. Petitioner's mother and sister both testified at

sentencing, indicating that they, themselves, were aware that

petitioner had a significant history of substance abuse and drug

rehabilitation treatment. Petitioner's mother and sister also

testified to petitioner's "very strange" and aggressive behavior

while under the influence of drugs, and apparently normal behavior

when not. Moreover, they both testified, naming several known drug

treatment facilities where petitioner had been previously taken.

     Indeed, on direct appeal, this court noted several possible

corroborative bases, which were not relied on by the experts,

namely police reports, witness reports, reports from the

rehabilitative center or centers at which petitioner allegedly

received treatment, and discussions with petitioner's friends and

family. Britz, 123 Ill. 2d at 461-62.

     Petitioner's claim that trial counsel failed to provide

corroboration of the experts' opinions that he suffered from a

substance abuse disorder, a borderline personality disorder and was

chemically dependent does not depend on the documentation that he

included with his post-conviction petition. Such claim rather

depends on evidence that there were independent corroborative bases

on which the experts could have relied had trial counsel so

provided. Such evidence appeared within the record on direct appeal

and therefore could have supported the claim that trial counsel was

ineffective for failing to provide corroborative bases.

     This is not a different or more meritorious ineffectiveness

claim because of information showing that there were additional or

stronger corroborative bases on which the experts could have

relied. Admissibility of the experts' opinion at trial turned on

whether there was any basis supporting those opinions besides

petitioner's statements. This is not a case like People v. Orange,

168 Ill. 2d 138, 158 (1995), where the additional information

impacted on the merits of the claim. Nor is this a case like People

v. Holman, 164 Ill. 2d 356 (1995), where an argument different from

that raised on direct appeal was presented with supporting

mitigation evidence which was not part of the record on direct

appeal. Neither is this case like People v. Eddmonds, 143 Ill. 2d

501, 528 (1991), where the same claim was made on direct appeal,

but depended on evidence not found within the trial record.

      We do not mean to suggest that conjectural information

regarding any independent corroborative bases would have sufficed

on direct appeal. On the record here, however, it is shown that

there were independent corroborative bases on which the experts

could have relied so that their opinions could have been admitted

if trial counsel had provided those bases. We conclude that trial

counsel's failure in this regard was apparent from the trial record

and the issue could have been considered on direct appeal. The

claim was therefore waived.

                 II. Ineffective Assistance at Sentencing

                                     A

     Petitioner argues first that trial counsel failed to conduct

a meaningful mitigation investigation. Petitioner specifically

argues that trial counsel failed to provide the three experts with

information to buttress their opinions at sentencing that he

suffered from a borderline personality disorder and a substance

abuse disorder.

     In support of this argument, petitioner points out that cross-

examination of his expert witnesses focused primarily on the fact

that their opinions were based solely on petitioner's statements.

Under cross-examination, Fryans was forced to acknowledge that if

petitioner had not told him the truth about his drug abuse history,

Fryans' opinion regarding a psychiatric disorder would change.

During closing argument, the State was also able to attack the

opinion evidence on the basis that it relied solely on petitioner's

statements which were self-serving and unreliable.

     Petitioner supports this claim with the same documents which

supported the previous claim. As mentioned previously, the

affidavits of petitioner's mother and sister were included with the

petition. Affidavits from one of petitioner's former high school

teachers and two school administrators were included with

petitioner's motion for reconsideration.

     Petitioner's mother stated in her affidavit that trial counsel

only spoke with her two or three times and spent no more than 20

minutes discussing with her the anticipated mitigation testimony.

She stated that, if she had been asked by counsel, she could have

testified that petitioner experienced a troubled adolescence and

childhood, including that his father drank heavily. Petitioner's

sister made similar statements in her affidavit, and included that

she had once dropped petitioner on his head when he was an infant.

Hospital records concerning that incident were included with the

petition, but no permanent injury was indicated. Petitioner's

former teacher stated in her affidavit that petitioner had been a

"learning disabled" student while in high school. If she had been

asked, petitioner's former teacher would have testified that she

had been attached to him because he had always been helpful to and

respectful of her. The two school administrators attested to the

fact that petitioner was enrolled in special educational needs

classes in high school, and records to that effect had been

available at the time of his trial, but were subsequently

destroyed.

     Attorney Vonnahmen acknowledged during his deposition that he

did not investigate mitigation sources other than petitioner's

mother and sister and the three expert witnesses.

     The State initially responds that this claim is waived for

failure to raise it on direct appeal. The State contends that trial

counsel's failure to provide information to buttress the expert's

testimony at sentencing was apparent from the trial court record of

proceedings. We disagree.

     Unlike trial counsel's alleged failure to provide

corroborative information for the expert witnesses for trial, trial

counsel's allegedly similar failure at sentencing did not result in

any exclusion of their testimony. Petitioner claims that the

alleged failure instead exposed the experts' testimony to serious

attack under cross-examination. This ineffectiveness claim thus

depends on corroborative information which would have blunted or

prevented the attack. Unlike the trial-phase-ineffectiveness claim,

which depended on information, apparent from the record, showing

that trial counsel could have in fact provided an independent

corroborative basis for the experts' opinions, this claim depends

on information which, qualitatively, could have supported the

experts' opinions. Such information is not apparent of record, but

was included with the post-conviction petition. Accordingly, we

find that the claim was not waived for failure to raise it on

direct appeal.

     With respect to any general failure to conduct a sufficient

mitigation investigation, we do not agree that this case compares

to People v. Perez, 148 Ill. 2d 168 (1992), cited by petitioner. In

Perez, the defense counsel possessed the defendant's school

records, which revealed his mental deficiencies, his history of

disruptive behavior and mitigating information about his family.

Defense counsel did not introduce the records into evidence, or

seek to have defendant's intelligence test results interpreted. Nor

did defense counsel seek any independent expert testing of the

defendant even though he was experiencing communications problems

with him. Defense counsel did introduce a psychological report

which was primarily damaging to defendant's case. An investigator

enlisted by post-conviction counsel uncovered an abundance of

additional mitigation information regarding defendant's

dysfunctional family which defense counsel could have unearthed

with the information already in his possession. Perez held that

counsel's investigative failures were objectively unreasonable and

prejudicial to the defense so as to raise a serious doubt about the

reliability of sentencing. Perez, 148 Ill. at 191, 194-95.

     In the present case, trial counsel contacted two close family

members of petitioner and discussed the subject of mitigation with

them on several occasions. These two witnesses were presented by

trial counsel at sentencing. They testified that petitioner had a

history of substance abuse since adolescence, but that he could

behave normally while not on drugs. In addition, trial counsel

presented three expert witnesses, who had examined petitioner and

administered to him a series of intelligence and psychological

tests. These witnesses offered expert opinions that petitioner

suffered from mental and substance abuse disorders, was an

alcoholic and was chronically and permanently chemically dependent.

Trial counsel's efforts to provide mitigation evidence here simply

do not compare with the lack of assistance found in Perez.

     Furthermore, the generally mitigating evidence, which

petitioner contends should have been presented, was also either

cumulative of that which was already introduced or of very little

value. And while it may be that the documentative evidence would

have provided additional support for the expert opinions, the

evidence could have also undercut the mitigation strategy by

revealing petitioner's lack of rehabilitative potential. See

Holman, 164 Ill. 2d at 372 (noting that mitigation evidence can be

double-edged). Moreover, some of the documentation petitioner

included with his petition depended on petitioner's own relation of

his substance abuse history in much the same manner as did the

experts' opinions. Thus, the truth of petitioner's psychological

condition was subject to prosecutorial attack even if trial counsel

had introduced these documents. Based on these considerations, it

cannot be said that trial counsel's failures to obtain

documentation in support of the experts' opinions was objectively

unreasonable. Failure to present mitigating evidence at a capital

sentencing hearing does not in itself prove that a defense attorney

was ineffective. Perez, 148 Ill. 2d at 186. We hold that it was not

shown that petitioner's sixth amendment right to effective counsel

was violated.

                                     B

     Petitioner next argues that trial counsel failed to establish

the mitigating factor of an "extreme mental or emotional

disturbance" (Ill. Rev. Stat. 1985, ch. 38, par. 9--1(c)(2)), where

that factor was the "only factor which could have precluded the

imposition of the death penalty." Petitioner claims that trial

counsel admitted in his deposition that he did not rely on this

mitigating factor as evidence, but stated that he relied on a

noncapital mitigating factor, "substantial grounds tending to

excuse or justify" the criminal conduct "though failing to

establish a defense" (Ill. Rev. Stat. 1985, ch. 38, par. 5--5--

3.1(4)). Petitioner maintains trial counsel failed in this respect,

despite that the prosecution presented expert opinion testimony

negating such a disturbance and also emphasized this point in

closing argument.

     The State contends that this claim is waived because the only

material, not part of the record on direct appeal, that petitioner

now offers in support of this claim is trial counsel's

acknowledgment that they did not request this information at

sentencing. We disagree.

     Petitioner supported this claim with Vonnahmen's deposition

testimony regarding his performance during the mitigation phase at

sentencing; Dr. Fryans' deposition testimony that, had he been

asked, he would have testified that because petitioner suffered

from a borderline personality disorder, he also suffered from an

extreme emotional disturbance; and the affidavit of Dr. William Kip

Hillman, a clinical psychologist, wherein he concluded that, at the

time of the offense, petitioner suffered from an extreme mental or

emotional disturbance. We find that the claim depends on this

information which was not apparent from the trial record. Thus, the

claim was not waived.

     The State first asserts that petitioner mischaracterizes the

record. According to the State, trial counsel never expressed in

his deposition that he did not rely on the mitigating factor of

extreme emotional disturbance, and in fact he presented evidence at

sentencing supporting that factor and specifically argued the

factor in closing. According to the State, neither is this a case

where trial counsel relied solely on one particular mitigating

factor and then failed to prove or argue it. The State maintains

that, once stripped of mischaracterization, petitioner's claim is

no more than that trial counsel failed to elicit a statement from

Dr. Fryans that petitioner suffered from an extreme emotional

disturbance. The State insists such failure, given the totality of

evidence presented and argued by trial counsel, cannot be said to

have been objectively unreasonable.

     The record shows that Dr. Fryans, Dr. Mulry, Joan Stockhoff,

and petitioner's mother and sister testified at the sentencing

hearing. The testimony of petitioner's mother and sister is

recounted substantially above.

     Stockhoff testified that she interviewed petitioner, and he

related a substance abuse history, which included alcohol

consumption, glue sniffing, and ingestion of "acid" and other

pills. On the day of the crime, he took "acid," Valium, Placidyl,

cocaine and alcohol. At the time, he had been drinking for several

days.

     Dr. Mulry testified that petitioner told him that on the day

of the crime he had taken large quantities of these same

substances, and had been taking cocaine daily for the previous two

weeks. Mulry explained the effect of these drugs and the concept of

"tolerance" and expressed an opinion that petitioner had a high

tolerance level. Mulry said that once petitioner had taken all

these drugs, anything could happen. Mulry finally stated that in

his opinion petitioner was permanently and chronically chemically

dependent.

     Dr. Fryans testified that he conducted a psychiatric

examination of petitioner that involved seven interviews and

testing. Fryans related petitioner's drug history and the

substances he ingested on the date of the crimes. Fryans testified

that petitioner had attempted suicide when he was 18 or 19 by

taking Darvon and alcohol. He also testified that, in his opinion,

petitioner suffered from a mental disease or disorder classified as

an "Axis I Diagnosis of Substance Abuse Disorder" and an "Axis II

Diagnosis of Borderline Personality Disorder." Fryans testified

that the magnitude of the drugs consumed by petitioner was true and

could have distorted his reasoning and judgment potential. Dr.

Fryans stated that, at the time of the incident, petitioner's

inhibitions could have been removed and he would have had almost a

total lack of impulse control. In Fryans' view, petitioner would

not have been in control to make judgments and realistic decisions

leading up to the incident.

     The prosecution presented the testimony of Dr. Philip

Bornstein, who agreed that petitioner suffered from a personality

disorder, but expressed the opinion that he did not suffer from an

extreme mental or emotional disturbance. Dr. Imhoff also testified

that his tests did not show that petitioner had an extreme mental

or emotional disturbance.

     In closing, the prosecution advised the jury that it would be

instructed that mitigating factors which precluded the death

penalty included commission of the crime while under the influence

of an extreme emotional disturbance and other facts and

circumstances. The prosecutor emphasized that the defense had not

presented expert testimony that petitioner was under such influence

at the time of the crime and pointed out that the only witnesses

who had been asked had said that the petitioner was not.

     Referring to the factor of extreme mental or emotional

disturbance, the prosecutor said, "Remember that that is one of the

mitigating factors that the judge will instruct you on. That

alleged mitigating factor has been negated by the evidence, so

there is no factor sufficient to preclude the death penalty."

     Trial counsel in closing also advised the jury that mitigating

factors were any facts or circumstances, including extreme

emotional disturbance, that provided reason to impose a sentence

less than death. Trial counsel argued that both sides had presented

experts who testified about petitioner's mental state at the time.

Trial counsel warned the jury not to be misled by the State into

believing that an extreme emotional disturbance was the only factor

that it could consider and if resolved against petitioner, it

should give him the death penalty. Trial counsel acknowledged such

disturbance as a mitigating factor, but argued that petitioner did

not have to prove it, as was suggested by the State, because "[a]ny

facts or circumstances" could preclude the death penalty. Trial

counsel referred repeatedly to a theme of "[a]ny facts or

circumstances."

     In preparation for his deposition during post-conviction

proceedings, Vonnahmen read the sentencing hearing transcript from

seven years previous, but not all parts of it. When asked to

explain his mitigating strategy, Vonnahmen testified that his

theory had been that petitioner was operating under the influence

of drugs and alcohol at the time, and that he should not receive

the death penalty because of his age. Vonnahmen recalled that his

approach had been to present altogether the evidence of

petitioner's drug use, the experts' views on what that would mean,

and testimony from petitioner's family to show he was not a "total

loss." The thrust of the mitigation was to show petitioner's

erratic behavior, and that when he was not on drugs he could be

normal. Vonnahmen consistently indicated that he did not address

mitigation by "break[ing] it down by every little section of the

statute." He did not remember if there was any strategic reason why

he did not ask Fryans to give an opinion regarding whether

petitioner suffered from such an emotional disturbance.

     When asked, Vonnahmen identified "substantial grounds to

excuse" as a specific mitigating factor he had relied on and

specifically identified no other. Vonnahmen, however, also

identified any other mitigating factors as "whatever" he had

argued. He agreed that an extreme emotional disturbance is a

mitigating factor and appeared surprised to learn that he had in

fact specifically argued extreme emotional disturbance in closing

at sentencing.

     Section 9--1(c)(2) of the Criminal Code of 1961 provides that

the court shall instruct the jury to consider any mitigating

factors relevant of the imposition of the death penalty, which may

include, but need not be limited to, commission of the murder under

the influence of extreme mental or emotional disturbance, though

not such as to constitute a defense. Ill. Rev. Stat. 1983, ch. 38,

par. 9--1(c)(2). Obviously, a jury may consider any facts or

circumstances in mitigation under the statute, including a

defendant's age and personal history (see People v. Colon, 69 Ill.

App. 3d 1021 (1979)), so that commission under the influence of

extreme mental or emotional disturbance is not the only mitigating

factor which may preclude the death penalty.

     In the present case, trial counsel approached mitigation by

presenting evidence which, in general, concerned petitioner's

psychological state prior to and during the crime, his personal

history and age. A good deal of the evidence presented indicated

that petitioner was emotionally disturbed at the time he committed

the crimes. Cf. People v. Madej, 106 Ill. 2d 201, 221 (1985)

(evidence that defendant "very hyper" or "like a maniac" allegedly

indicative of factor). Defense and prosecution experts agreed that

petitioner displayed a number of personality disorders from which

it could be reasonably inferred that he suffered from some manner

of emotional disturbance. Petitioner was shown also to suffer from

permanent, chronic addiction and alcoholism. His sister also

testified that he acted "very, very strange" when on drugs.

Notably, the jury which heard the evidence at sentencing was the

same jury that heard trial evidence that no more than a month

before the crimes, petitioner fired guns from vehicle windows, drew

his gun on a waitress, and pulled a knife on a fellow employee,

threatening to kill him. The crime itself was senseless, and

petitioner, himself, told police that he just went "real crazy"

when he first shot Covert and saw her blood. Based on this record,

it would be difficult not to conclude that there was a good deal of

evidence presented indicating that petitioner was extremely

emotionally disturbed at the time of the crime.

     Furthermore, Vonnahmen testified that he approached mitigation

by presenting the available evidence without differentiating

between any possible statutory factors. His deposition reveals that

he was aware that an extreme emotional disturbance is a mitigating

factor, but also that he could not recall whether and to what

extent he might have relied upon it at sentencing. Vonnahmen's

statement that he relied on a noncapital mitigating factor must be

viewed within the context of his entire testimony which indicated

an overall lack of memory regarding the details of petitioner's

sentencing hearing.

     In sum, the record shows that evidence of an extreme emotional

disturbance was presented, along with other mitigating evidence,

but that trial counsel did not elicit a specific opinion from

Fryans on that point.

     Against this backdrop, it cannot be said that a statement of

opinion by Fryans that petitioner was under the influence of an

extreme emotional disturbance at the time he committed the crimes

was the only evidence which would have precluded the death penalty.

An expert's pronouncement of his opinion to that effect would not

have made the evidence of petitioner's disturbance more sufficient.

Based on the evidence before the jury which was not considered

sufficiently mitigating to preclude the death penalty, it is not

reasonably likely that Fryans' opinion would have turned the tide

in petitioner's favor. We conclude that no sixth amendment

violation was shown by counsel's failure.

                                     C

     Lastly, petitioner argues that trial counsel failed to ask Dr.

Fryans to explain borderline personality and substance abuse

disorders to the jury. Petitioner contends that if Fryans had been

asked to testify as he had during the offer of proof or during his

deposition, the jury would have received an explanation of how

these defects mitigated petitioner's conduct in this offense.

     The State contends that this claim was waived for failure to

raise it on direct appeal. The State asserts that the only facts

now offered by petitioner outside the trial record are trial

counsel's acknowledgments that they failed to make such requests.

According to the State, trial counsel's failure was apparent from

the trial record, making the claim capable of consideration on

direct appeal. We agree that the claim was waived.

     Even assuming that Dr. Hillman's affidavit was offered as

support for this claim, the claim could have been raised and

considered on direct appeal. The fact that trial counsel did not

request an explanation is apparent from the trial court record. And

the offer of proof shows the response that Fryans could have

provided if he had been asked to explain. Thus, the claim does not

depend on the fact that trial counsel later admitted their failure,

that if asked, Fryans would have testified as he did in the offer

of proof, or that Hillman could respond similarly. Accordingly, we

find that petitioner waived the claim for failing to raise it on

direct appeal.

                III. Dismissal Without Evidentiary Hearing

     Petitioner next claims that he made a substantial showing that

his sixth amendment right was violated and, thus, the cause should

be remanded for an evidentiary hearing. More specifically,

petitioner claims that the allegations and supporting documents

attached to his petition show that trial counsel failed to conduct

an investigation into available mitigation information, and the

record also shows counsel failed to elicit expert testimony that

petitioner was suffering from an extreme emotional disturbance at

the time of the offense. The State responds that petitioner is not

so entitled.

     A post-conviction petitioner is not entitled to an evidentiary

hearing of his claims as a matter of right. Ill. Rev. Stat. 1989,

ch. 38, par. 122--6; see Whitehead, 169 Ill. 2d at 370-71.

     An evidentiary hearing should be conducted when the petitioner

makes a " `substantial showing of a violation of constitutional

rights,' " which means that the petition's allegations must be

supported by the record or by accompanying affidavits. Whitehead,

169 Ill. 2d at 371, quoting People v. Silagy, 116 Ill. 2d 357, 365

(1987). The burden is on the petitioner to establish a substantial

deprivation of constitutional rights. See Whitehead, 169 Ill. 2d at

370. If the allegations and supporting documents were true and

would establish a constitutional violation, the trial court must

hold a hearing to determine the actual facts. People v. Stepheny,

46 Ill. 2d 153 (1970). Denial of an evidentiary hearing is a matter

of discretion, and the trial court's discretion will not be

reversed absent such an abuse. Whitehead, 169 Ill. 2d at 371.

     As previously discussed, however, the allegations of trial

counsel's particular failures and supporting documents, even

accepted as true, would not establish constitutional violations.

     Furthermore, petitioner's claim was that trial counsel failed

to provide the three experts with documentative data to corroborate

their opinions. Petitioner included that documentative data with

his petition, and there was no issue concerning the information's

evidentiary value or its trustworthiness. Thus, beyond the

petition's allegations and its inclusions, there was no evidentiary

issue for the trial court to explore with respect to the claim of

trial counsel's claimed ineffectiveness at trial.

     With respect to the sentencing phase, petitioner claimed that

trial counsel failed to investigate and provide documentative

evidence to support the expert witnesses' views that were based on

petitioner's history of drug abuse and alcoholism. This mitigation

evidence took the form of the "many documents" petitioner included

with his petition. According to petitioner, "[t]his information was

vital *** since it would have eliminated the prosecutions' primary

argument that Mr. Britz was falsifying his drug history and level

of intoxication on the day of the offense."

     Petitioner's additional argument that trial counsel failed to

elicit the expert opinion that he suffered from an extreme

emotional disturbance at the time of the crime also required no

evidentiary hearing. Attorney Vonnahmen's and Dr. Fryans' post-

conviction deposition transcripts and Dr. Hillman's affidavit were

included with the petition, and there was no dispute regarding this

evidence, so that the claim was properly decided on the pleadings.

     In sum, the pleadings and attachments alone revealed no

constitutional violations, and the trial court did not abuse its

discretion by declining to conduct an evidentiary hearing.

                            IV. Fitness Hearing

     According to Illinois Department of Corrections records dated

September 11, 1985, which was approximately one month prior to the

commencement of trial, petitioner was referred to as "currently" on

medication and state that the medication was "ordered." Somewhat

illegible handwritten notes accompany these printed statements,

apparently stating three types of medication and their treatment

purposes. The purpose for one medication is stated as "nervous

stomach." The purpose for a second medication is "blurred" or

"blurring [v]ision." The third medication is clear, "Selsun lotion

[d]aily."

     In this appeal, for the first time, petitioner argues that he

should be granted a fitness hearing to determine whether these

medications which he was taking "under medical direction"

interfered with his ability to present a defense. Petitioner claims

that People v. Brandon, 162 Ill. 2d 450 (1994), and People v.

Gevas, 166 Ill. 2d 461 (1995), mandate that the cause be remanded

to the trial court for a fitness hearing. See Ill. Rev. Stat. 1983,

ch. 38, par. 104--21(a).

     Notably, petitioner makes no representation nor suggests that

the medications he was taking were in fact psychotropic, similar to

psychotropic, or mind-altering drugs. Neither does he dispute in

any way the State's assertions that he seeks remand for a fitness

hearing because one month prior to trial he was using Mylanta for

a nervous stomach and Selsun lotion as a topical solution. Nor does

he present argument that such medications could have interfered

with his ability to present a defense. Rather petitioner claims

that the exact medications he was taking are unknown and given his

Department intake records which indicate that he had been suicidal

(from 1979 to 1984) and was "referred to PSYCH," "there is a very

real possibility" that the medications could have been psychotropic

drugs. Thus, in the alternative, petitioner requests a limited

remand for the purpose of determining exactly what medication he

was taking approximately one month prior to trial.

     Although, petitioner did not include this issue in his

original or amended post-conviction petitions (see Ill. Rev. Stat.

1983, ch. 38, par. 122--3), or raise this issue in the trial court

during post-conviction proceedings, he urges that we relax

application of the waiver rule in the interests of "fundamental

fairness" (People v. Flores, 153 Ill. 2d 264, 274 (1992)) and the

maintenance of an "orderly administration of justice" (People v.

Davis, 156 Ill. 2d 149, 160 (1993)).

     In People v. Hollins, 51 Ill. 2d 68, 70 (1972), the procedural

bar was relaxed on the basis of fundamental fairness where it

appeared that post-conviction counsel had not made any effort to

amend the pro se petition or argue issues other than the petition's

timeliness. In People v. Slaughter, 39 Ill. 2d 278, 284-85 (1968),

the bar was also relaxed on the same basis where the record

unmistakably disclosed that post-conviction counsel had not

provided effective assistance with respect to the original pro se

petition and a motion to amend.

     In the instant case, it appears that post-conviction counsel

initially overlooked the statements in the Department records

pertaining to petitioner's medication and failed to include that

issue in the first- or second-amended petition. This failure is

similar in scope and effect to those discussed in Hollins and

Slaughter. In the interests of fundamental fairness, we will

address the merits of this claim.

     Section 104--21(a) of the Code of Criminal Procedure of 1963

provides in relevant part that:

               "[a] defendant who is receiving psychotropic drugs

          or other medications under medical direction is entitled

          to a hearing on the issue of his fitness while under

          medication." Ill. Rev. Stat. 1983, ch. 38, par. 104--

          21(a).

     Brandon construed the plain language of section 104--21(a) as

providing defendants a legal right to a fitness hearing under the

conditions specified within the provision. Given that entitlement

and a defendant's expressed choice to exercise it, Brandon found

that the decision to hold such a hearing was not a matter committed

to the trial court's discretion. See Brandon, 162 Ill. 2d at 461.

Brandon therefore found that defense counsel's failure to inform

the court that the defendant was on psychotropic drugs satisfied

the second prong of Strickland v. Washington, 466 U.S. 668, 80 L.

Ed. 2d 674, 104 S. Ct. 2052 (1984). Brandon held that the defendant

was entitled to a new trial for the failure to conduct a fitness

hearing. See Brandon, 162 Ill. 2d at 459, 461.

     Gevas applied Brandon's construction of section 104--21(a),

also recognizing that the conditions specified in the provision,

"the administering of psychotropic medication," equated with a bona

fide doubt as to fitness to stand trial. See Gevas, 166 Ill. 2d at

469. Brandon and Gevas were premised on the General Assembly's

recognition that "psychotropic medication is an important signal

that a defendant may not be competent to stand trial." Brandon, 162

Ill. 2d at 457; Gevas, 166 Ill. 2d at 468-69. Other cases that also

dealt with the administration of psychotropic drugs followed. See

People v. Kinkead, 168 Ill. 2d 394 (1995); People v. Nitz, No.

77549 (June 20, 1996); People v. Birdsall, No. 77259 (June 20,

1996). In each case, a showing of the administration of

psychotropic drugs either resulted in remand for a new trial or a

limited factual hearing to determine whether the court had a

further duty to conduct a formal fitness hearing. We have noted

also that no fitness hearing is required where the defendant's

right to a fitness hearing pursuant to section 104--21(a) is not

established, "as where there is no indication that defendant was

being treated with psychotropic medication during the relevant

times." Kinkead, 168 Ill. 2d at 411.

     In the present case, the State argues that petitioner's claim

is barred because he seeks to benefit from the retroactive

application of a "new rule" announced by Brandon. Under the

circumstances of this case, however, we need not decide whether the

granting of a fitness hearing would be mandatory by application of

Brandon or a matter of discretion under pre-Brandon case law (see

People v. Tilson, 108 Ill. App. 3d 973 (1982); People v. Balfour,

148 Ill. App. 3d 215 (1986)). It must first be shown that

petitioner comes within the purview of section 104--21(a). Based on

his claim as stated, petitioner would apparently contend that

section 104--21(a) encompasses the administering of medication for

any treatment purposes or is triggered if the exact medication is

unknown, but circumstances indicate it was possible that the

medication was psychotropic.

     Petitioner first claims that because he was taking "other

medications under medical directions," a condition specified in

section 104--21(a), he should receive a fitness hearing. We

disagree.

     The primary rule of statutory interpretation, to which all

other rules are subordinate, is that a court should ascertain and

give effect to the intent of the legislature. Bonaguro v. County

Officers Electoral Board, 158 Ill. 2d 391, 397 (1994). In

interpreting a statute, the language used by the legislature must

be given its plain and ordinary meaning. Brandon, 162 Ill. 2d at

460-61. The term "other medications under medical direction" within

section 104--21(a), however, cannot be plainly understood. Reliance

on statutory construction principles reveals that, under the

doctrine of ejusdem generis, a specific provision, when followed by

a general provision, as in section 104--21(a) is read to control

the general when both relate to the same subject matter. People v.

Villarreal, 152 Ill. 2d 368, 379 (1992). Furthermore, under the

doctrine, when a statutory clause describes a class or classes of

persons or things, and then includes "other" persons or things, as

in "other medications under medical direction," following a

specific reference, as in "psychotropic drugs," the word "other" is

interpreted to mean "other such like." See Coldwell Banker

Residential Real Estate Services of Illinois, Inc. v. Clayton, 105

Ill. 2d 389, 396 (1985); People v. Lowey, 271 Ill. App. 3d 929,

933-34 (1995); People v. McBrien, 144 Ill. App. 3d 489, 494-95

(1986). Thus, applying these principles, the general term "other

medication" in section 104--21(a) must be interpreted as meaning

other such like medication with reference to psychotropic drugs.

See People v. Eubanks, Nos. 1--94--2285, 1--94--2754 (Ill. App.

August 13, 1996).

     This interpretation accords both with law and other

construction principles. Section 104--21(a) provides that certain

conditions entitle a defendant to a fitness hearing. Because

fitness to stand trial refers to a defendant's ability "to

understand the nature and purpose of the proceedings" against him

or assist in his defense (Kinkead, 168 Ill. 2d at 407; 725 ILCS

5/104--10 (West 1992)), the legislature could only have intended

that section 104--21(a) include medications capable of interfering

with that ability. Psychotropic drugs are clearly capable of doing

so. By "other medications under medical direction," the statute

recognizes that other medications that have effects like

psychotropic drugs are capable of doing so as well. Moreover, the

legislature could not have intended an absurdity. Given the

ultimate determination in a fitness hearing, it would be absurd for

the administering of medications which do not interfere with a

defendant's ability to understand and assist the defense to require

such a hearing.

     "Psychotropic medication[s]" are defined as in the Mental

Health and Developmental Disabilities Code as "medication whose use

for antipsychotic, antidepressant, antimanic, antianxiety,

behavioral modification or behavioral management purposes is listed

in AMA Drug Evaluations, latest edition, or Physician's Desk

Reference [PDR], latest edition, or which are administered for any

of these purposes." 405 ILCS 5/1--121.1 (West Supp. 1995). The

United States Supreme Court has also explained that psychotropic

drugs are "medications commonly used in treating mental disorders

such as schizophrenia," the effect of which is "to alter the

chemical balance in the brain, the desired result being that the

medication will assist the patient in organizing his or her thought

processes and regaining a rational state of mind." Washington v.

Harper, 494 U.S. 210, 214, 108 L. Ed. 2d 178, 193, 110 S. Ct. 1028,

1032 (1990).

     Selsun lotion or the other medications petitioner was taking

for a "nervous stomach" or for his "vision" do not approximate the

category of psychotropic drugs described above which affect one's

mind. We hold that defendant could not be entitled to a fitness

hearing under section 104--21(a) on the basis that he was taking

"other medication" which was like a psychotropic drug.

     Additionally, on the basis of the record before us, we hold

that petitioner would not be entitled to a limited remand to

determine the names of two medications he was taking. The two

medications were stated to be for a nervous stomach and blurring or

blurred vision. Contrary to petitioner's assertions, the

Department's record does not indicate that he was then suicidal.

These circumstances are not such to compel the conclusion that he

was possibly taking psychotropic drugs. Petitioner's request for a

fitness hearing or limited hearing is accordingly denied.

                                CONCLUSION

     We find that, based on the allegations within the second-

amended post-conviction petition, petitioner was not denied the

effective assistance of trial counsel at either trial or

sentencing. Accordingly, we affirm the trial court's dismissal of

the second-amended post-conviction petition.

     The judgment of the circuit court of Sangamon County is

affirmed. The clerk of this court is directed to enter an order

setting Tuesday, January 21, 1997, as the date on which the

sentence of death entered by the circuit court of Sangamon County

shall be carried out. Defendant shall be executed in a manner

provided by the law. 725 ILCS 5/119--5 (West 1992). The clerk of

this court shall send a certified copy of the mandate in this case

to the Director of Corrections, to the warden of Stateville

Correctional Center, and to the warden of the institution where

defendant is now confined.

Affirmed.

     JUSTICE HARRISON, specially concurring:

     I agree with the result reached by the majority, but write

separately because I disagree with the reasoning employed by my

colleagues in rejecting petitioner's Brandon claim.    

     In People v. Brandon, 162 Ill. 2d 450, 461 (1994), decided

just two years ago, this court declared the language of section

104--21(a) of the Code of Criminal Procedure of 1963 (Ill. Rev.

Stat. 1983, ch. 38, par. 104--21(a)) to be clear and unambiguous.

Now my colleagues have abruptly decided that a phrase in that

statute, "other medications under medical direction," cannot be

plainly understood. This contention is untenable. As with the

remainder of the text, there is nothing the slightest bit confusing

about this phrase. It is perfectly straightforward. "Other

medications under medical direction" means simply medications,

other than psychotropic drugs, taken under the direction of medical

personnel.

     Obviously unhappy with such a construction, my colleagues

attempt to find refuge in Latin, invoking the phrase ejusdem

generis. This phrase is a familiar one in law, but has nothing to

do with this case. When used as a canon of statutory construction,

ejusdem generis means that when a statute lists several classes of

persons or things and is followed by a general reference

supplementing the enumeration, the general words will be construed

as applying only to "others such like" the enumerated persons or

things (Board of Trustees of Southern Illinois University v.

Department of Human Rights, 159 Ill. 2d 206, 211 (1994)), i.e.,

persons or things of the same general class as those listed

(Black's Law Dictionary 517 (6th ed. 1990)).

     In this case, ejusdem generis is inapplicable for the obvious

reason that there is no listing of several classes of persons or

things followed by a general reference. While "other medication"

may be general, it is not proceeded by the enumeration of several

classes or persons or things. Only one item comes before it and

that is "psychotropic drugs." Accordingly, the doctrine cannot

support the majority's conclusion that "other medication" is

limited in meaning to other medication like psychotropic drugs.

"Psychotropic drugs" is an alternative to "other medication" and in

no way qualifies that term.

     The fallacy in the majority's position becomes further

apparent when one considers how medication could possibly be

psychotropic-like without qualifying as psychotropic itself. The

basic definition of "psychotropic" is simply "acting on the mind"

(Webster's Third New International Dictionary 1834 (1986)), and

there is no statutory basis for assigning it anything more than

this generic meaning. If medication affects one's mind, it is

psychotropic under this definition. If it does not, it is not.

There is no middle ground.

     Because the specific term "psychotropic drugs" embraces the

entire class of drugs that act on the mind, the general term "other

medications" must be given a meaning beyond that class. Otherwise,

the term would add nothing to the statute. It would be mere

surplusage, thus violating the more important rule of construction

that a statute should be construed so that no word or phrase is

rendered superfluous or meaningless. See In re Special Education

Placement of Walker, 165 Ill. App. 3d 846, 851 (1987), rev'd on

other grounds, 131 Ill. 2d 300 (1989).

     The majority asserts that construing the statute to require a

fitness hearing even where the medication is not psychotropic or

psychotropic-like would be absurd. This argument is based on a

fundamental misunderstanding of the import of the statute. The idea

behind the law is not that the medication itself is disabling,

although it may be, but that the need for medication is indicative

of the presence of an underlying condition which may prevent a

defendant from being able to fully participate in his defense.

     The General Assembly has expressly recognized that a

defendant's ability to understand and assist the defense may be

impaired by physical conditions as well as mental ones. See Ill.

Rev. Stat. 1983, ch. 38, pars. 104--10, 104--13, 104--15, 104--17.

If a defendant cannot see because of vision problems, or cannot

breathe because of respiratory ailments, or cannot concentrate

because of fever, pain or other illness, his ability to defend

himself may be every bit as compromised as a defendant who is

depressed or delusional. The General Assembly included the "other

medications" language in section 104--21(a) (Ill. Rev. Stat. 1983,

ch. 38, par. 104--21(a)) to cover such physical conditions, just as

it included the "psychotropic drug" language to cover mental

conditions. The notion behind the statute is that whichever type of

problem afflicts a defendant, if it is serious enough to require

medication under medical direction, it is serious enough to warrant

a hearing on his fitness. The type of medication is irrelevant. As

long as it is taken under medical direction, a fitness hearing is

necessary.

     There is nothing inherently absurd or irrational about this

arrangement. One may disagree with it as a matter of policy, but

the policy judgment was for the legislature to make. I note, in

this regard, that the legislature has now apparently concluded that

its policy decision was unsound and has therefore amended the

statute to delete the reference to "other medications." Pub. Act

89--428, eff. December 13, 1995 (amending 725 ILCS 5/104--21 (West

1994)). That amendment, however, is further proof that the

majority's construction of the law is incorrect.

     When the legislature amends an act by deleting certain

language, there is a presumption that it intended to change the law

in that respect. Board of Trustees of Community College District

No. 508 v. Burris, 118 Ill. 2d 465, 475 (1987). If the majority

were correct and "other medications" meant simply "other

psychotropic-like medications," there would have been no need to

change the law here. To the contrary, the amendment would have been

completely nonsensical, because in terms of assessing a defendant's

fitness, there is no rational basis for differentiating drugs that

are actually psychotropic from drugs that may not be psychotropic

but have the same kinds of effects on a defendant's mind.

     Although the majority has thus misinterpreted the statute, I

nevertheless agree that the petitioner in this case is not entitled

to a fitness hearing under Brandon, 162 Ill. 2d 450, and its

progeny. The mere fact that a defendant has taken medication under

medical direction at some point during the pendency of the case is

not sufficient to trigger the requirements of section 104--21(a)

(Ill. Rev. Stat. 1983, ch. 38, par. 104--21(a)). Administration of

the medication must have been proximate in time to the trial or

entry of a guilty plea and sentencing. See People v. Kinkead, 168

Ill. 2d 394, 414 (1995). That was not the case here. Petitioner

took the medication approximately one month before the trial

commenced, and there is no indication in the record that anything

was occurring at the time, in terms of defense preparation, that

required decisionmaking or assistance on his part. It is for this

reason that the court is correct in rejecting petitioner's request

for a fitness hearing.

     In all other respects, I join in the majority's opinion.