NOTICE

Decision filed 03/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220112-U

NO. 5-22-0112

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 05-CF-832 |
| | ) | |
| LERON WILBORN, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Boie and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in denying the defendant's motion for leave to file a successive postconviction petition, and any argument to the contrary would lack merit, and therefore the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Leron Wilborn, is serving two natural-life sentences for the first degree murders of his wife and his wife's friend.  He now appeals from an order of the circuit court that denied his motion for leave to file a successive petition for postconviction relief.  His appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit, and on that basis, it has filed with this court a motion to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a memorandum of law in support thereof.  The defendant has filed a response (and an amendment thereto) to OSAD's

1

*Finley* motion. This court has examined OSAD's *Finley* motion, the accompanying memorandum, the defendant's response thereto, and the entire record on appeal, and has determined that this appeal does indeed lack merit. Accordingly, OSAD must be granted leave to withdraw as the defendant's appellate counsel, and the order of the circuit court, denying the defendant's motion for leave to file a successive petition, must be affirmed.

¶ 3                                    BACKGROUND

¶ 4                        The Trial and the Direct Appeal

¶ 5     In 2005, the defendant was charged with two counts of intentional first degree murder. See 720 ILCS 5/9-1(a)(1) (West 2004). The victims were Nicole Jacobs, who was the defendant's estranged wife, and Wayne Dunnavant, who was Jacobs's friend. In 2006, the cause proceeded to jury trial. The State's evidence showed that Jacobs and Dunnavant were found dead in Jacobs's apartment in Belleville, Illinois. Jacobs had several serious knife wounds, including the fatal stab wound that was 6½ inches deep, went through her rib cage, and cut the left ventricle of her heart. Dunnavant had two knife wounds, including a fatal incised wound along his armpit that cut through the axillary artery. The defendant claimed self-defense. He testified that his wife and her friend had ambushed him. He also acknowledged that the incident had left him uninjured. The jury found him guilty on both counts. Later in 2006, the circuit court sentenced him, on each count, to imprisonment for a term of natural life, with the sentences to be served consecutively.

¶ 6     On direct appeal, the defendant, represented by OSAD, argued that (1) the circuit court abused its discretion when it refused to instruct the jury on involuntary manslaughter and (2) the two natural-life sentences could not run consecutively. This court rejected the first argument but found the second argument meritorious. Accordingly, this court modified the sentences to make

2

them run concurrently but otherwise affirmed the judgment of conviction. *People v. Wilborn*, No. 5-07-0029 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7                              The First Petition for Postconviction Relief

¶ 8      In June 2008, the defendant filed a petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)).  He alleged that his trial counsel had provided constitutionally ineffective assistance by, *inter alia*, failing to hire a crime-scene expert to explore the possibility that the police had tampered with the victims' bodies at the crime scene, and also alleged that his direct-appeal counsel was ineffective for failing to argue trial counsel's ineffectiveness for not hiring an expert to investigate police tampering with the bodies at the scene.  The circuit court dismissed the defendant's postconviction petition.  On appeal, this court affirmed the dismissal, finding that the petition had failed to state the gist of a constitutional claim.  *People v. Wilborn*, No. 5-08-0334 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 9      The Defendant's Motion for Leave to File a Successive Postconviction Petition

¶ 10    In December 2021, the defendant filed the motion that is the subject of the instant appeal—a *pro se* motion for leave to file a successive postconviction petition.  Along with the motion for leave, the defendant submitted the successive postconviction petition that he sought to file.  In the motion for leave—in a section entitled, "demonstration of cause and prejudice"—the defendant stated that he was taking psychotropic drugs during 2005 and 2006, and he was not given a fitness hearing despite his taking those drugs and despite his preexisting mental retardation and personality disorder.  "[T]herefore," he concluded, "[the defendant] cannot and shall not, required [*sic*] to demonstrate their own incompetency or their own unfitness to be able to recognize legal procedural [*sic*] or rule of evidence to be presented before the court, this will place [the defendant]

3

at a higher standard as an attorney [*sic*] also one as being competent to do so [*sic*]." The defendant cited *People v. Hodges*, 234 Ill. 2d 1, 10 (2009).

¶ 11    In the successive petition he was seeking to file, which accompanied his motion for leave, the defendant presented five claims: (1) that from pretrial through sentencing, the defendant was taking psychotropic medication that rendered him unable to assist in his own defense, and trial counsel was ineffective for failing to request a fitness hearing once he learned of the medication, and the circuit court failed to inquire into the fitness issue after it had received the presentence investigation report that referred to his taking that medication; (2) that due process was violated where the defendant did not have a fitness hearing despite his taking psychotropic medication, which raised a *bona fide* doubt as to fitness; (3) that the undisputed facts in the record showed that the defendant was taking psychotropic medication at the times he was tried and sentenced, and further showed that he suffered from mental retardation, alcohol dependency, and personality disorder with anti-social features, rendering him unfit to be tried or sentenced, and therefore the court was required to hold a fitness hearing; (4) that where defense counsel failed to investigate and to discover that the defendant was taking psychotropic medication during trial, counsel provided ineffective assistance when he failed to request the fitness hearing to which the defendant was entitled; and (5) that where the defendant was deprived of due process by being put on trial while he was unfit, this cause must be remanded for a determination of the defendant's moral culpability in light of his mental retardation.

¶ 12    Attached to the successive postconviction petition were various pieces of paper relating to the defendant's mental health. One typed paper showed the defendant's full scale IQ of 52, placing him in the "moderate mentally retarded range of intellectual functioning." This paper was not

4

dated, but it included a statement from the defendant that he was last released from the Illinois Department of Corrections in July 2004.

¶ 13    On December 28, 2021, the circuit court ruled on the defendant's *pro se* motion for leave to file a successive postconviction petition. First, the court reduced the defendant's five claims to a simple, solitary claim: that the defendant "was taking psychotropic medication at the time of his trial, and he should have been given a fitness hearing before being tried or before being sentenced." Next, the court found that the defendant had failed to present any reason for not having raised that claim in his initial postconviction petition, which he had filed in June 2008. The court noted the defendant's allegation that he had taken psychotropic medication during 2005 and 2006. "Even assuming that that allegation is true," the court wrote, "he failed to allege that he was taking such medication in 2008 when he filed his initial post-conviction petition. The fact that he may have been taking psychotropic medication in 2005 and 2006 does not explain why he failed to raise that claim in 2008." Concluding that the defendant had failed to establish cause for not including his claim in the first postconviction petition, the court denied the defendant's motion for leave to file a successive postconviction petition.

¶ 14    The defendant filed a motion to reconsider the denial, which the court also denied. A notice of appeal was filed, thus perfecting the instant appeal. The circuit court appointed OSAD to represent the defendant.

¶ 15                                    ANALYSIS

¶ 16    This appeal is from an order denying the defendant leave to file a successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). Appellate review of such an order is *de novo*. *People v. Robinson*, 2020 IL 123849, ¶ 39. This court may affirm on any ground of record. *People v. Johnson*, 208 Ill. 2d 118, 129 (2003).

5

¶ 17 As previously stated, the defendant's court-appointed appellate attorney, OSAD, has filed a *Finley* motion and legal memorandum, seeking to withdraw as counsel on the ground that this appeal lacks merit. The defendant has filed a response to OSAD's motion.

¶ 18 A postconviction proceeding commences with the filing of a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2020). In general, the Act permits a defendant to file only one petition for postconviction relief, unless he has obtained leave of court to do so. *Id.* § 122-1(f). Leave of court may be granted only if a defendant demonstrates (1) "cause" for his failure to bring the claim in his initial postconviction proceedings and (2) "prejudice" results from that failure. *Id.* A defendant demonstrates cause "by identifying an objective factor" that impeded his ability to raise a specific claim during his initial postconviction proceedings. *Id.* He demonstrates prejudice by demonstrating that the claim not raised during his initial postconviction proceedings "so infected the trial that the resulting conviction or sentence violated due process." *Id.* The defendant must satisfy both elements of the cause-and-prejudice test—that is, he must show both cause and prejudice—in order to win the right to file a successive postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). However, he must set out only a *prima facie* case. *People v. Bailey*, 2017 IL 121450, ¶ 24. The cause-and-prejudice test must be applied to each individual claim raised by the defendant. *Pitsonbarger*, 205 Ill. 2d at 462. Leave to file a successive petition will be denied only where "it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 19 In its memorandum of law in support of its *Finley* motion, OSAD reduces the defendant's five postconviction claims to just two claims: (1) his life sentence was unconstitutional because of

his mental retardation, and (2) he suffered ineffective assistance of trial counsel where counsel failed to request a fitness hearing based on the defendant's use of psychotropic medication before and during trial. (Rewriting the defendant's five claims into just two claims was sensible, as there was a great deal of overlap between the five.) OSAD then suggests that the defendant failed to demonstrate prejudice for either of these claims. This court will discuss prejudice as to each of the two individual claims.

¶ 20 In regard to prejudice and the first claim, OSAD cites *People v. Coty*, 2020 IL 123972, wherein our supreme court held that a mandatory sentence of natural-life imprisonment for an adult defendant with an intellectual disability did not violate the proportionate-penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The court noted that intellectual disability "represent[s] a 'two-edged sword' " of both diminished culpability and future dangerousness. *Coty*, 2020 IL 123972, ¶ 34. A defendant cannot argue that his intellectual disability alone constitutes sufficient mitigating evidence to overturn a life sentence. *Id.* From *Coty*, OSAD then reaches this conclusion: "Any argument that [the defendant's] life sentence was unconstitutional due to his intellectual disabilities would fail under *Coty*, and he therefore could not demonstrate any constitutional infirmity in his sentence that would meet the prejudice standard." OSAD's conclusion is correct.

¶ 21 In his written response to OSAD's motion, filed with this court, the defendant stated (as he did in his successive postconviction petition) that he had an IQ of 52, which placed him in the mentally retarded range. The defendant also pointed out that the trial judge commented that he did not appear "stupid or unintelligent" but rather the exact opposite. The defendant stated in his response that his good behavior in court was the result of decades of slowly learning how to socialize, and not evidence that he knew what was happening. Nothing in the defendant's response

to OSAD's motion salvages his claim that his life sentence was unconstitutional because of his mental retardation. *Coty* remains the law.

¶ 22     In regard to prejudice and the defendant's second claim—*i.e.*, the claim that trial counsel was ineffective for failing to request a fitness hearing based on the defendant's use of psychotropic drugs—the defendant's successive petition relied on precedent that had been overruled, primarily *People v. Brandon*, 162 Ill. 2d 450 (1994), and was no longer "good law." *Brandon* held that a defendant who is taking psychotropic medication is entitled to a fitness hearing, and that the failure of counsel to request such a hearing requires remand. *Id.* at 455-61. However, our supreme court overruled *Brandon* in *People v. Mitchell*, 189 Ill. 2d 312 (2000). There, the court held that where counsel failed to request a fitness hearing, the proper standard for reviewing prejudice is not whether a fitness hearing would have been held, but (rather) whether a reasonable probability exists that, had the defendant received the fitness hearing to which he was entitled, he would have been found unfit for trial. *Id.* at 334. The *Mitchell* ruling comports with the relevant statutory authority, which reads: "A defendant who is receiving psychotropic drugs shall not be presumed unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104-21(a) (West 2020). (This statutory language has been effective since December 31, 1996, well before the defendant's 2006 trial.) So, the correct standard is whether there was a *bona fide* doubt as to the defendant's fitness to stand trial. *Id.* § 104-11(a).

¶ 23     OSAD concludes that there was no evidence of a *bona fide* doubt as to the defendant's fitness. OSAD points out that the defendant was "an active participant in his trial," who seemed to understand what was happening and who "gave appropriate answers during his testimony." Having examined the trial transcript, this court must agree with OSAD. Nothing in the transcript suggested a *bona fide* doubt as to the defendant's fitness. Furthermore, nothing in the defendant's

8

response to OSAD's *Finley* motion changes anything. The defendant failed to establish prejudice as to the claim regarding psychotropic medication and a fitness hearing.

¶ 24                                    CONCLUSION

¶ 25    The circuit court did not err in denying the defendant's motion for leave to file a successive postconviction petition. The defendant failed to show prejudice related to any of the claims he sought to present. No argument to the contrary would have merit. Accordingly, OSAD must be granted leave to withdraw as the defendant's appellate counsel, and the judgment of the circuit court must be affirmed.

¶ 26    Motion granted; judgment affirmed.